## THE STATE OF IOWA *ex rel.* WEIR *v.* THE COUNTY JUDGE OF DAVIS COUNTY.

The act entitled "An act in relation to certain state roads therein named," approved January 22, 1853, is constitutional.

It is the duty of the courts to give such a construction to an act, if possible, as will avoid the necessity of exercising the power of declaring an act of the legislature void, and uphold the law.

In determining whether a law is constitutional, under section twenty-six of the third article of the constitution, which declares that every law shall embrace but one object, which shall be expressed in the title, the unity of object is to be looked for in the ultimate end designed to be attained, and not in the details leading to that end.

Section 2183 of the Code, which provides that the writ of mandamus may be issued on the information, under oath, of the party beneficially interested, contemplates that either the public, through its officers, for the enforcement of a public duty, or an individual, having a right to be enforced, or an interest to be affected, may cause the writ to be issued, and not that every one who pleases may sue out the writ.

Where the petition or affidavit for a writ of mandamus, does not show any right or interest whatever in the relator, in connection with the object of the writ, the writ should not be allowed.

### Appeal from the Davis District Court.

THIS was a proceeding by mandamus, by the state of Iowa, on the relation of James R. Weir, against the county judge of Davis county, to compel the opening of a certain state road. The petition alleges that an act of the General Assembly, of 22d of January, 1853 (Stat. 1852–3, 175, § 24), entitled "An act in relation to certain state roads therein named," provided for a state road from Bloomfield, in Davis county, to Wintersett, in Madison county, and appointed commissioners to locate it; that all the steps and proceedings required by the act, had been taken; that one Thomas Davis claimed damages, which were assessed by appraisers at three hundred dollars; that the county judge ordered the road to be established, upon condition that the persons interested would pay the said three hundred dollars damages; and that the said judge refused to pay the said

damages, and to order the supervisor to open the road. The alternative writ was issued, and commands the county judge to enter an order establishing the road absolutely ; to order the three hundred dollars to be paid from the county treasury, and to notify the supervisor to open the road according to law, or to show cause.  The defendant answered, showing cause against the writ, alleging, among other things, that the act establishing the road is unconstitutional, and that the alternative writ should not have been allowed. The District Court held the answer to be insufficient, and on motion for a peremptory writ, sustained the same in part, and ordered that a peremptory writ of mandamus do issue, commanding the county judge of Davis county, to forthwith direct the proper supervisor of roads, to have opened and worked according to law, so much of the said road as lies in Davis county, and that the said county pay the costs of this proceeding.  From this order the defendant appeals, and in this court alleges for error, that the court erred in allowing the writ of mandamus, and in making the order for the peremptory writ.

*Knapp & Caldwell*, for the appellant.

*Palmer & Trimble*, for the appellee.

WOODWARD, J.—The first question presented, is, whether the act entitled " An act in relation to certain state roads therein named," approved January 22, 1853, is constitutional ?  The objection is made, that it is contrary to article 3, section 26 of the constitution, declaring that " every law shall embrace but one object, which shall be expressed in the title."  The act in question contains sixty-six sections, in which it establishes some forty-six roads, and vacates some, and provides for the relocation of others.  Is here a plurality of object, in the sense of the constitution ?

The title of this act will be observed, and it will be noticed that all the sections of the act (except the last, as to taking effect), relate to roads, either establishing, vacating

or relocating them.    Section fifty-five, constituting a certain county line a road, is not an exception; nor is section sixty-one, which changes a certain county road into a state road. The intent of this provision of the constitution was, to prevent the union, in the same act, of incongruous matter, and of objects having no connection, no relation.    And with this, it was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill whose title expressed another.    It is manifest, however, that there must be some limit to the division of matter into separate bills or acts.    It cannot be held with reason, that each thought or step toward the accomplishment of an end or object, should be embodied in a separate act.    When we find in the revenue law provisions concerning the county treasurer's powers to levy upon and sell personal property as a constable, or concerning his fees, or relating to pedler's license; and when we see in the school law, provisions about the superintendent of public instruction, and the school fund commissioner, and about school district officers, and their bonds, and about state, and county and school district funds; we are not surprised, and no one suspects a breach upon the constitution.    These things are congruous with the end proposed.    But if we should find in one of these acts, a bank charter, or some provision establishing roads, or giving the right of way to railroads, or concerning the law of mechanics' lien, we might well be surprised, and say, this is not what it professess.    Many other instances of both these kinds, might be named.

It is important to bear in mind, that to declare an act unconstitutional and void, is the exercise of the highest power of the court, and is not to be resorted to, unless it become necessary.    Although the power is to be exercised when the case demands it, yet the courts will not favor it, nor use it, unless in a clear and decided case.    And it is the duty of the courts to give such a construction to an act, if possible, as will avoid this necessity, and uphold the law.    *Fisher* v. *McGirr et al.*, 1 Gray, 1; *Rice* v. *Foster*, 4 Harringt. 479; *State* v. *Cooper*, 5 Blackf. 258; *Ogden* v. *Saunders*, 12

Wheat. 270; *Calder* v. *Bull*, 3 Dall. 386; *Fletcher* v. *Peck*, 6 Cranch, 87; 2 Pet. 522; 19 J. R. 38; 1 Cow. 550; 4 Dall. 309.

We are still in the days when the legislature may be called contemporaneous with the constitution, and when its acts may be considered as a contemporaneous construction of that instrument. And still more true is this of the past years. We will look at the acts of the session of 1846 and 1847, the first after the adoption of the constitution. The "object" of an act may be broader or narrower, more or less extensive; and the broader it is, the more particulars will it embrace. The revenue, school, and justices' acts, and others, are broad and cover many particulars. But it may be said that these differ from such an one as that before us; that there is a unity in the ultimate object, toward which the particulars tend, which does not belong to the other; that these particulars have a relation, an affinity, to each other, whilst each and all tend to the general object; and that in the case before us, the particulars have no relation, no affinity, and one does not aid the other. There is an appearance of truth in this argument, at first thought, but it is doubtful if the distinction exists in reality. There is really no more unity of object in an act to establish a system of common schools, or to consolidate the general laws of the state, than there is in the one to organize and establish certain counties, or to establish a system of state roads. In all such cases, the whole of the matter is homogeneous, and falls under some general idea expressed in the title. The unity of object is to be looked for in the ultimate end, and not in the detail or steps leading to the end. In accordance with this idea, has been the legislation of this state to this time. Let us turn to the statutes of 1846, 1847. Chapter sixty-first, page 78, relates to the clerk of the District Court, clerk of the board of county commissioners, and the county treasurer and recorder. What holds these divers matters together, and makes a unity of object? Merely the idea that they shall hold their respective offices at the county seat. Chapter sixty-six, page 81, is an act to establish new

counties, &c. More than one county is established, and boundaries are defined, the governor is authorized to appoint certain officers in them, and the jurisdiction of justices of the peace, is provided for. Chapter one hundred and twenty-four, page 183, is an act whose object occurs at every session, and is commonly expressed by the phrase, " To provide for the support of the state government," and this is the object, in whatever terms it may be expressed. Here, under one head, or object, occurs a vast variety of particulars, having no relation to, or connection with, each other, except as they are united in the idea of the " support of the state government." And it is probable that no one ever doubted the validity of these acts; not even of the last named, and required each appropriation to be embodied in a separate act. Again, in the same volume, page 77, chapter fifty-nine, is an act for laying out and establishing certain roads therein named. The act consists of eleven sections, and ten roads are established by it. This is exactly like the one in the case at bar. Some weight is due to the fact that in this first General Assembly, were many men who were members of the convention which formed the constitution, and inserted this *new* provision. This consideration is not conclusive, by any means, it is true; but it assists us in arriving at the intent of the constitution. There is, undoubtedly, great objection to uniting so many particulars in one act, but so long as they are of the same nature, and come legitimately under one general denomination or object, we cannot say that the act is unconstitutional. This subject is brought under consideration in the case of *Santo et al.* v. *The State, ante,* 165. The case of the *Sun Mutual Ins. Co.* v. *The Mayor, &c., of New York,* 4 Seld. 241, throws light upon the matter. The constitution of the state of New York provides, that " *no private* or *local* bill shall embrace more than one *subject,* and that shall be expressed in the title." The act in question was entitled, " An act to enable the supervisors of the city and county of New York, to raise money by tax." It contained a single section, and authorized that body to raise and collect, by tax, a sum not exceeding (in round

The State of Iowa ex rel. Weir v. The County Judge of Davis County.

sums) $1,600,000 for contingent expenses; $400,000 for public expenses; $185,000 for lamp district; and $295,000 for deficiency in the taxes of the preceding year. It was objected that these constituted different "subjects." But,. says the court, "these are not different subjects within the meaning of the 16th section of the constitution. If the power granted to levy the tax is one subject, which has not been questioned, then if the mode in which that power is to be exercised is another, there would be no way of comply-ing with the constitution, except by embodying the whole act in the title." "So, the purposes for which the money is to be raised are not different subjects." "There must be but one subject, but the mode in which the subject is treated, or the reason which influenced the legislature, could not, and need not be stated in the title, according to the letter and spirit of the constitution." It will be noticed that the word subject is used here. There is much reason to believe that this word has, in such a use of it, a narrower significa-tion than the word "object." And this would be consist-ent with its use in a private or local act, whilst the word "object" would be appropriate to a public or general one. To sustain the objection in the case at bar, would be to hold a doctrine which would render null a large portion of the legislation of the state, and render future legislation so incon-venient as to make it nearly impracticable. Such a con-struction, we think, is neither demanded nor warranted.

 *Second.* The second error assigned is, that the alternative writ should not have been allowed.

Under this it is alleged, that a proper case was not made out. The writ recites the relation upon which the writ was granted; and the question arises, whether Weir holds any such relation to the matter as to enable him to sue for the writ. Section 2183, in chapter 125 of the Code, relating to mandamus, provides that this writ may be "issued on the information, under oath, of the party beneficially interested," &c. Is Weir, the relator, beneficially interested in the matter, or in the granting of the writ? The statute seems to con-template, not that every one who pleases may sue out this

writ; but that either the public, through its officers, for the enforcement of a public duty, or an individual, having a right to be enforced, or an interest to be affected. The case before us, however, does not show *any* right or interest whatever, in the relator, in connection with the object of the writ. He shows no private interest, nor does he show that he is even a citizen of the county, or of the state. It would seem from the papers, that Weir was seeking to enforce the payment to Thomas Davis of the three hundred dollars awarded to him. So far as appears to us now, Davis might make this application, but we do not see upon what ground Weir can make it. And he does not set forth any ground, upon which *he* should seek to enforce the opening of the road—not even that he is a citizen of the county, and interested in common with all. It is not intended to say definitely whether this would be sufficient, but it is suggested, to show that a case is not made which will raise even that question. The state does not complain, and seek through the public officers, to enforce her law, and we are not prepared to say that any one who chooses, may do it. See the case of *The People* v. *The Canal Board*, 13 Barb. 432, 443.

The judgment of the District Court is reversed, and the writ is quashed.

WRIGHT, C. J.—I concur in the conclusion, that the case should be reversed on the last assignment, but doubt as to the first. I am not prepared to hold such legislation constitutional, but incline to hold that the objection is well taken.