Nicholson, C. J.,
delivered the opinion of the Court.
This case commenced by petition for supersedeas, in which it is alleged, that defendant as collector of privilege taxes for Shelby county, issued a distress warrant against the property of petitioner, a licensed liquor dealer, for failure and refusal by him to pay the State and County tax assessed against him, under the act of July 7th, 1870, by which the tax on all privileges was increased 50 per cent, upon the basis then existing. It is alleged in the petition, that this act of the Legislature is void, because it violates a ft. 2. s. 17, of the Constitution of the State, which provides that “ no bill shall become a law which embraces more than one subject; that subject to be expressed in the title.” The Circuit Judge held the act unconstitutional, and quashed the distress warrant. From this judgment the State and county have appealed.
The title of the act of July 7th, 1870, is as follows: “An act to fix the State tax on property.” The first section fixes the State tax on every $100 worth of property at 40 cents.
*516 Section 2 repeals the act of February 25th, 1870, which fixes the State tax at 20 cents.
Section 3 amends sec. 4 of the act of February 25th, 1870, as to the manner and order in which the Comptroller and Treasurer were directed to pay out the money in the treasury.
Section 4 increases the tax on all privileges 50 per cent, upon the existing basis.
It is insisted that this act violates sec. 17 of art. 2 of the Constitution of the State, which is as follows: “Sec. 17. Bills may originate in either house; but may be amended, altered, or rejected by the other. No bill shall become a law which embraces more than one subject; that subject to be expressed in title. All acts which repeal, revive, or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived, or amended.”
The particular portion of this section on which the question, in the present case is raised, is the following: “No bill shall become a law which embraces more than one subject; that subject to be expressed in the. title.”
Similar provisions have been introduced, of late years, into many of the State' Constitutions, and frequent occasions have arisen for their construction by the courts. In several States the courts have construed the provisions to be only directory to the Legislatures, and held that their acts are not invalid, although not conforming to the directory requirements of their Constitution. But the courts of most of the States have construed the provisions to be mandatory *517 or imperative, and therefore, that the acts not passed in conformity therewith, are invalid and void.
The language adopted in our Constitution differs, in some respects, from that used in other States. “No bill shall become a law which embraces more than one subject.” This is a direct, positive and imperative limitation upon the power of the Legislature. It matters not that a bill has passed through three readings in each house, on three different days, and has received the approval of the Governor; still it is not a law of the State if it embraces more than one subject. It is, therefore, a plain, absolute and unconditional limitation upon legislative power. But while it is ■conceded that a bill which embraces more subjects than one can not become a law, because of the imperative or mandatory character of the language, yet it is suggested, that the remaining portion of the provision — ■ to-wit: “that subject to be expressed in the title,” was not intended to be mandatory but only directory; and, therefore, that a bill may become a law, although the subject of the bill may not be expressed in the title.
In the present case, we do not deem it necessary to express an opinion as to the question, whether any provision of a Constitution, can be properly treated otherwise than as mandatory. The essential nature and object of constitutional law, being restrictive upon the powers of the several departments of government, it is difficult to comprehend how its provisions can be regarded as merely directory. But, however this may be as to other provisions of the Constitution, we *518 can see no reason for placing a different construction on the language used in the latter portion of the provision under consideration, from that placed on the first portion. The language “that subject to he expressed in the title,” can not merely be regarded as directory. The command is positive that no law shall embrace more than one subject, and is equally positive •that that subject is to be, or shall be expressed in the title. To constitute a valid law under this provision, the bill must not embrace one subject alone, but that subject must be embraced in the title.
Plausible reasons might be given to show, that it was not essential to the object which the Convention sought to accomplish, that the subject of legislation should be imperatively indicated in the titles of bills, but where there is no real ambiguity in the language employed, we have no right to fritter away the obvious import of that language by construction. The Convention evidently designed to cut up by the roots, not only the pernicious system of legislation, which embraced in one act incongruous and independent subjects, but also the evil practice of giving titles to acts which conveyed no real information as to the objects embraced in its provisions. To accomplish both purposes, the Convention deemed it wise to withhold from the Legislature, any power to enact a law which either embraced more than one subject, or which failed to express the fact in its title.
It follows that if the act of July 7th, 1870, either embraces more subjects than one, or if the title does not express the subject of the act, the law is uncon *519 stitutional and invalid. This brings us to consider these two questions.
It is said by Judge Cooley, at page 144 of his work on Constitutional Limitations, that “the general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means neccessary or convenient for the accomplishment of this general object, to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible.” He adds: “The generality of a title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. The Legislature must determine for itself, how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it.” "We concur in these general views as sound and practical, and by them the validity of the act in question must be tested.
The first inquiry is, does the act in question embrace more than one subject? As we have seen, the first section provides for raising revenue by a tax on property; the second repeals a former law as to the manner and order of paying out the revenue from the treasury, and the fourth provides for raising revenue by a tax on privileges.
The general subject of the act is revenue — and each and every section has direct reference to the *520 subject of revenue in its different phases. It can not be said that there is the least incongruity among the provisions of the four sections. They have • a natural, if not a necessary connection with and dependence upon each other. Revenue is the general subject of- the act; its amount and its disbursement from the treasury are the special objects provided for. It is clear that the act is not obnoxious to the objection that it embraces more subjects than one: 14 Ind., 195; 2 Iowa, 280; 19 N. Y., 119; Cooley’s Con. Lim., 145.
But the next .question is, does the title of the act express its subject? The title is, “An act to fix the State tax on property.” We have seen that the subject of the act is revenue; the raising of it by taxation on property and privileges, and its disbursement from the treasury. The title indicates that the subject of the act is the fixing of the State tax on property. We have seen that the fixing of the State tax on privileges, and the mode and order of disbursing the revenue were germane to the fixing of the State tax on property, and therefore, that the several subjects embraced in the act were not incongruous. The question then arises, is the subject of the act sufficiently expressed by the title, which describes it as “An act to fix the State tax on property ” ? In answering this question, it is necessary to look to the object to be accomplished, by requiring the subject of the act to be expressed in the title. In the case of The People v. Mahaney, 13 Mich., 494, it is said: “that the object was to put an end to a practice, by which, *521 through dexterous management, clauses were inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies, whose members were not generally aware of their intention and effect, and to require that in every ease, the proposed measure should stand upon its own merits, and that the Legislature should be fairly satisfied of its design when required to pass upon it.” Judge Cooley, Con. Lim., 145, states the object of the provision, as deduced from numerous cases, to be: “ to prevent surprise or fraud upon the Legislature, by means of provisions in bills of which the titles gave no intimation, and which might therefere be overlooked, and carelessly and unintentionally adopted.”
Such being the object of the constitutional provision, when a bill was introduced with the announcement, that it was “a bill to fix the State tax on property,” with a section in it, fixing the tax on privileges, could it be said with reason or plausibility, that the title gave no intimation as to the provisions of the bill, in regard to taxing privileges as well as property? In 25 Ill., 181, it was held, that an act to incorporate a railroad company, may authorize counties to subscribe to its stock, or otherwise aid the construction of the road. After citing a number of similar cases, Judge Cooley concludes as follows: “many other cases are referred to in the note which will further illustrate the views of the courts upon this subject. There has been a general disposition to construe the constitutional provisions liberally, rather than to embarrass legislation by a construction whose strict *522 ness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted:” Cooley’s Con. Lim., 146.
It is not to be denied, that there is some seeming conflict in the authorities on this subject, but upon a careful examination of the several cases, we are satisfied that the conflict is more apparent than real. In the case of Ryerson v. Utley, 16 Mich., 278, which is the most important' authority relied on, by the counsel for the petitioner, Judge Cooley distinctly recognizes the rule of construction which we have adopted. In that case, he said: “ the only object mentioned in the title to this act, is the preservation of the Muskegon River Improvement; for which purpose the act authorizes tolls to be levied and expended. The payment of Beard’s claim is in no way connected with this object; and the title to the act would apprise neither the Legislature nor the public, that it covered provisions under which a large sum was to be collected and disbursed to pay for the original construction of the work.” It being clear that the title of the act had no reference to, or connection with the payment of Beard’s claim, he held the act unconstitutional. But he reiterated what he had held in the The People v. Mahany, 13 Mich., 494, that if the title covered the object, of the act, the degree of particularity with which it should be set out, was for the Legislature to determine. In support of this position he cites 8 Iowa, 82 ; 11 Iowa, 482; 7 Ind., 681; 14 Ind., 195; 2 Iowa, 280; 19 N. Y. 116, and 3 Met. Ky., 566, in which last named case it was held, that *523 “the constitutional provision should receive a reasonable construction, and any provision of the act directly or indirectly relating to the subject expressed in the bill, and having a natural connection therewith, and foreign the'reto, should be deemed embraced in it. We approve, says Judge Cooley, of the principle thus stated.
The cases of Mewherter v. Price, 11. Ind., 199, and The State v. Bowers, 14 Ind., 195, were decided upon the ground, that the provisions in the acts declared void, were not embraced in, but were clearly excluded from the titles of the acts. The subjects of those provisions had no relation, directly or indirectly, to the subject expressed in the title, but were foreign thereto, of consequence void under the Constitution of Indiana.
It is obvious, therefore, that the true rule of the construction, as fully established by the authorities, is, that any provision of the act, directly or indirectly relating to the subject expressed in the title, and having a natural connection thereto, and not foreign thereto, should be held to be embraced in it. Following this rule, we hold that in the case before us, the fourth section of the act, fixing the tax on privileges, has a ' natural connection with the subject expressed in the the title of the act, and that the same is constitutional and valid.
The judgment of the Circuit Court is therefore reversed, and judgment will be rendered here upon the supersedeas bond..