## Van Shaack v. Robbins.

1. **Tax-sale:** FRAUD OF PURCHASER. Fraud committed by a purchaser at tax-sale, as, by combination with other purchasers, will not defeat the title of a subsequent purchaser without notice of the fraud, and for value.

> ARGUMENT 1.— *Such fraud does not render the sale and deed absolutely void, but voidable only, notwithstanding the statute (Rev., § 784) declares that if fraud on the part of the purchaser be established, the sale and title shall be void; and it is well settled that a bona fide purchaser of a title merely voidable by reason of something existing in pais or de hors the record, of which he has no notice, will be protected.*

> ARGUMENT 2.— *The word "void" is frequently used in statutes and decisions as synonymous with voidable.*

*Appeal from Polk District Court.*

WEDNESDAY, MARCH 19.

ACTION to set aside a tax sale and title. The plaintiff avers that he is the owner by a connected chain of title from the

United States to himself, of the N. E. of S. E. of section 2, T. 81, R. 27; that the defendant claims title under a tax sale of the land by the treasurer of Polk county, made October 6, 1868; that at said sale the purchaser and others entered into an agreement to prevent competition in the bidding, and agreed with each other that they would take turns in bidding, and that neither of said parties would bid the amount of the taxes for any less than the whole of each tract offered; that the land was bid off accordingly by one Parks, who was a party to that agreement, and for a grossly inadequate price. * * *

The defendant, for answer, averred without controverting the agreement, that a certificate of sale was duly issued to Parks, and was, within three years, duly sold and assigned by him to one Warden, who, after the expiration of three years, received the treasurer's tax deed for the land, executed in strict compliance with the statute; that said deed was duly recorded, and thereafter this defendant, without any notice of the agreement or of any fraud, purchased said land of said Warden for a valuable consideration, and in good faith, and entered into possession, and has made valuable improvements thereon, and is still in possession. The plaintiff demurred to this answer, because it did not state facts sufficient to constitute a defense, in that it only set out that the defendant was an innocent purchaser of a tax title. This demurrer was overruled. The plaintiff duly excepted, and appeals.

*Barcroft, Given & Hammond* for the appellant.

*Gatch & Wright* for the appellee, in support of the decision announced, and the use of the words void and voidable, cited *Somes* v. *Brewer*, 2 Pick. 191; *Green* v. *Kemp*, 13 Mass.; *Atlis* v. *Billings*, 6 Metc. 417; *Terrill* v. *Auchaner*, 14 Ohio St. 80; *Anderson* v. *Roberts*, 18 Johns. 528; *Snyder* v. *Roberts*, 13 Texas, 598; *Barnes* v. *Hardeman*, 15 id. 366; *Henderson* v. *Kimball et al.*, 7 Geo. 433; *Cassell* v. *Ross*, 33

Ill. 244; *Hamilton* v. *Lubukee*, 51 id. 415; *Devinney* v. *Reynolds*, 1 Watts & Serg. 328; *Eldridge* v. *Kuehl*, 27 id. 170; *Walker* v. *Kynett*, 32 id. 520; *Crocker* v. *Belanger*, 6 Wis. 645.

COLE, J. — The single question presented for decision is, whether fraud committed by the purchaser at a tax sale will defeat the title in the hands of an innocent purchaser of it for value. It is conceded by the respective counsel that the agreement set out in the petition would constitute such fraud. The question involves the construction of a clause of our revenue law. Our statute was evidently framed with the view of vesting a perfect title in the purchaser of land at tax sale, for taxes delinquent thereon. It specifies the various acts and proceedings to be taken from the listing to the sale, and then substantially enacts that any failure to comply with its requirements shall not affect the title to be derived at the sale. It then prescribes the form of the deed, and enacts (Rev., § 784) that it shall be conclusive evidence " that all the prerequisites of the law were complied with," except three, which it specifies; and the same section concludes with: "*provided further*, that in all cases where the owner of lands sold for taxes shall resist the validity of such tax title, such owner may show and prove fraud committed by the officer selling the same, or in the purchaser to defeat the same; and if fraud is so established such sale and title shall be void."

This controversy involves the construction of the language of the clause just quoted. The counsel for plaintiff claims that such title is absolutely void regardless of the person holding it. While defendants' counsel claim that it is only voidable, and if in the hands of an innocent purchaser it is valid, or cannot be avoided.

The word "void" has, with lexicographers, a well-defined meaning: " of no legal force or effect whatsoever; null and incapable of confirmation or ratification." Webster's Dic. But it is sometimes, and not unfrequently, used in enactments by the legislature, in opinions by courts, in contracts by par-

ties and in arguments by counsel, in the sense of *voidable;*
that is capable of being avoided or confirmed." Ib. The
word "void," when used in any of these instruments, will
therefore be construed in the one sense or the other, as shall
best effectuate the intent in its use, which will be determined
from the whole of the language of the instrument and the
manifest purpose it was framed to accomplish. Or, as the
same rule has been more extendedly stated : "it is the duty of
the court to ascertain the meaning of the legislature from the
words used in the statute, and the subject-matter to which it
relates, and to restrain its operation within narrower limits
than its words import, if the court are satisfied that the literal
meaning of its words would extend to cases which the legisla-
ture never designed to include in it." *Leeses, etc.,* v.
*Blougher,* 14 Pet. 178. This rule is broader than the one
first stated, for it would justify restraining the meaning of a
word to narrower limits than its import; whereas, to restrain
the word *void* to the meaning of *voidable,* is to give it one of
its not unfrequent accepted significations.

To illustrate : it was said in *Somes* v. *Brewer,* 2 Pick. 191,
"whatever may be avoided, may in good sense to this purpose
be called void, and this use of the term 'void' is not uncommon
in the language of statutes and of courts." And, in *Green* v.
*Kemp,* 13 Mass. 518, the words "utterly void" were held to
mean only *voidable.* It was also said in *Atlis* v. *Billings,* 6
Metc. 417, that the term "void" was "frequently introduced,
even by legal writers and jurists, where the purpose is nothing
farther than to indicate that a contract was invalid and not
binding in law." In *Terrill* v. *Auchaner,* 14 Ohio St. 85, it is
said that "the use of the word 'void' in a loose and uncertain
sense, is no novelty, either in legislation or the language of
jurists;" and it is there ruled that the words "shall be con-
sidered fraudulent and void" only meant *voidable.* In *The
King* v. *The Inhabitants of Hapswelt,* 8 B. & C. 471, the word
*void* in a statute was construed to mean *voidable* only. See
also *Anderson* v. *Roberts,* 18 Johns. 528; *Crocker* v. *Balanger,*
6 Wis. 645. So, in *Pearse* v. *Morrice,* 2 A. & E. 94, the

rightfulness of such construction was recognized. See also to same effect *Reg.* v. *The Inhabitants of Fordham*, 11 A. & E. 83; *Rex* v. *The Justices of Leicester*, 7 B. & C. 6; *Rex* v. *The Inhabitants of Birmingham*, 8 id. 29; *Gye* v. *Felton*, 4 Taunt. 876; *Barber* v. *Dennis*, 1 Salk. 68, and *Crosley* v. *Arkwright*, 2 Tenn. 605. While in *Smith* v. *Saxton*, 6 Pick. 483, the court, as in some of the above cases, refused to construe *void* to mean *voidable;* and so of other cases which might be cited. These cases abundantly show that the word *void* does not always mean null and incapable of confirmation; but its true meaning is always to be determined from all the language used and the intent thereby manifested. Where the word is used to secure a right to or confer a benefit on the public, it will, as a rule, be held to mean *null and incapable of confirmation*. But if used respecting the rights of individuals capable of protecting themselves, it will often be held to mean *voidable* only. Just as the word " *may* " will be construed to mean " *must* " where that appears to be the intent of the statute, and generally, where the public interests and rights are concerned it will be interpreted to mean *must* or imperative. *The Mayor, etc.*, v. *Furze*, 3 Hill, 612. But if private rights only are spoken of it will be interpreted as *may* or permissive at discretion. *The Newburg Turnpike Co.* v. *Miller*, 5 Johns. Ch. 112; *Malcom* v. *Rogers*, 5 Cow. 188, and many other cases.

The manifest and unmistakable purpose and intent of the entire revenue act is to give value to and confidence in tax titles. This value and confidence would be destroyed and the intent defeated by a holding which would render any tax title in the hands of an innocent purchaser wholly worthless and void, upon the showing of a fact which might not be in his power to ascertain in advance of his purchase.

The owner of the land sold for taxes has it in his power, under the rule indicated, by diligence, to avoid the sale for fraud at any time within three years, and even after that if the title is made to and held by the purchaser. While under a contrary rule a purchaser would be entirely unable to protect

himself in any case. The only sure protection a man could have under such rule would be to refuse to make any purchase of a tax title; and if all should thus act the entire purpose of the statute would be defeated. In our opinion then the statute is to be construed the same as if it read, " such sale and title shall be *avoided.*" It is suggested that this construction renders the proviso meaningless, or simply declarative, because such would be the rule without the proviso. But to this it may be answered, that, without the proviso, the conclusive effect given by the same section to the deed as evidence might, not unreasonably, be held to conclude also the question of fraud. At all events the proviso defeats that possible construction.

It would follow, under our statute respecting the registration of deeds, as well as under the plainest principles of equity, that a *bona fide* purchaser of such a title for value would be protected. It is unnecessary to cite authorities in support of a rule so well settled and uniformly held.

Again, a void thing is as nothing, and may be disregarded by anybody and everybody, under any and all circumstances. As, for instance, a judgment, which, when valid, is the most solemn act and conclusive verity known to the law; yet, if it be rendered by a court of limited jurisdiction, and in a matter not within its cognizance, it is void; and being so, it may be disregarded by every one and under all circumstances, and will give no right and afford no protection to any one. It is absolutely void. But, it is manifest from the language of the proviso under consideration, and above quoted, that the mere fact of a fraud in the sale does not *ipso facto* render the sale void without any act or step being taken by the owner to have it declared void by a court of competent jurisdiction. Because, by the very terms of the statute, the sale is to be void only when the owner shall "resist the validity of such tax title," and shall " show and prove fraud, * * * and if fraud is so established." This clearly contemplates legal proceedings to have the sale declared void; for, thereby only, in a legal sense, can fraud be proved or established. *Terrill* v. *Auchaner*,

14 Ohio St. 80. Suppose the original owner never institutes any action to set aside the tax deed, while all the prior proceedings and deed appear regular and legal upon their face; can it be that no title could ever be acquired under such a tax sale by any subsequent purchaser, however innocent? Yet this would be the result, if fraud made it absolutely void, in the broadest sense of that term. Such a construction would be contrary to the spirit of the revenue law, and against the letter of it which requires fraud to be first proved and established. Until this is done the sale is valid. Hence, it follows, that in cases of fraud the title is not absolutely void, but only voidable by a suit to have it so declared. And, as before stated, in all such cases it is well settled, both on principle and authority, that a *bona fide* purchaser of a title merely voidable by reason of something *in pais* or *dehors* the record, of which he has no notice, will be protected.

And further, our statute requires the owner to pay his taxes before sale, or to redeem his land within three years thereafter. If he neglects to do either he is in default, and in consequence thereof the treasurer is required to make a deed of the land to the purchaser. And, if such purchaser sells the land to another, who buys it without notice of the fraud, the rule is in such cases, as between parties otherwise equally innocent, that the party guilty of negligence must suffer the loss, which he might have prevented by the performance of his duty or proper diligence.

In any view of the case, it seems to us that the judgment of the district court was correct and must be

Affirmed.