THE MISSOURI PACIFIC RAILWAY COMPANY v. THE CITY OF WYANDOTTE *et al.*

1. CITY ORDINANCE — *Only one Subject in Title.* Section 9 of the act to incorporate cities of the second class, providing "that no ordinance shall contain more than one subject, which shall be clearly expressed in its title," is mandatory upon the city council. ( *Stebbins v. Mayer*, 38 Kas. 573, cited, and followed.)

2. Two SUBJECTS *in Title—Void Ordinance.* An ordinance of a city of the second class, the title to which clearly indicates, and the ordinance actually contains, two separate and distinct subjects, having no necessary connection with each other, is void *in toto* from that fact, and without reference to any other or further questions.

3. TITLE *Containing Two Subjects — Practice in Supreme Court.* When it manifestly appears both from the title and body of such an ordinance that it contains two separate, independent and distinct subjects of legislation, this court will not inquire whether one is without and the other within the power of the city council, nor will it investigate whether or not one subject is used to induce the passage of the other, but will give to section 9 of the act to incorporate cities of the second class its clearly expressed meaning that no city ordinance shall contain more than one subject, and if it does, it violates this provision and is void for that reason alone.

### *Error from Wyandotte District Court.*

INJUNCTION to restrain the collection of a certain tax. Judgment for the defendant *City* and others, at the March term, 1888. The plaintiff *Railway Company* brings the case to this court. The material facts appear in the opinion.

*Waggener, Martin & Orr,* for plaintiff in error.

*W. S. Carroll,* for defendants in error.

Opinion by SIMPSON, C.: The Missouri Pacific Railway Company commenced this action in the district court of Wyandotte county, to restrain the public authorities of the city of Wyandotte from the collection of taxes levied upon a certain tract of land owned by the railway company, which it is claimed is not within the limits of the city. In the year 1885, the mayor and council of the city of Wyandotte, on the theory that this land was within its corporate limits, levied thereon certain city taxes, as follows: General revenue fund, $140; general improvement tax, $45; bond interest tax, $84; bond sinking fund tax, $28. During this same year special assessment to build sidewalks was made, amounting to $341. The railway company paid the other taxes assessed against this land, and in due time commenced this action. The tract of land so assessed contains about 48.93 acres. It lies east of the Wyandotte town-site with its additions, and west of the Kansas river. It is commonly known as the "cypress yards." On May 16, 1881, an ordinance was passed by the mayor and council of Wyandotte, then a city of the second class, extend-

ing the city limits so as to embrace the cypress yards and some other outlying territory. The validity of this ordinance is the controlling question in the case. If that is valid, the judgment below refusing to restrain the collection of taxes is right; but if the ordinance is not valid, then the cypress yards were not subject to this taxation for the year 1885. The ordinance is as follows:

"An ORDINANCE extending the limits of the City of Wyandotte, Kansas, and appropriating funds to aid in building Riverview bridge.

*Be it ordained by the Mayor and Councilmen of the City of Wyandotte:*

"SECTION 1. On account of the benefits to be derived by extending the limits of the city of Wyandotte, Kansas, it is hereby declared necessary and expedient to extend the limits of the city and annex the following territory, under the rights and privileges guaranteed to cities of the second class by the laws of the state of Kansas, approved March 13, 1872, re-garding annexation : Commencing at a point in Summunduwot street, Wyandotte county, Kansas, where the same is inter-sected by the section line running north and south between sections 9 and 10, in township 11, range 25; thence due south to the southwest corner of the northwest quarter of section 15, township 11, range 25; thence easterly along the north line of Kansas avenue in Armstrong, to a point due south of the east line of 'Highland Park' addition to the village of Arm-strong; thence due north to and along the east line of said 'Highland Park' addition to the northeast corner of said ad-dition, thence due east to the east line of the right-of-way of the Union Pacific railway, Kansas division; thence south along the east side of the right-of-way of the Union Pacific railway, Kansas division, to the quarter-section line running east and west to the center of section 15, township 11, range 25; thence east on said quarter-section line to the center of the Kansas river; thence northerly along the center of said river to a point due east of the present east line of the southern limits of Summunduwot street; thence along the southern line of said street to the point of beginning.

"SEC. 2. That the sum of $3,000 is hereby appropriated to aid in building the Riverview bridge, said money to be is-sued in orders, bonds, or either, and to be deposited with the mayor of said city, to be paid out only upon the completion of said bridge when accepted by the city engineer.

· "SEC. 3. This ordinance shall take effect and be in force from and after its publication in the *Kawsmouth Pilot.*

"Passed in Council May 16th, 1881.

"A true copy.               ED. N. SAGER, *City Clerk.*

"Approved May 16th, 1881.    R. E. CABLE, *Mayor.*"

The trial court found as conclusions of law:

"1. The ordinance mentioned, so far as it relates to the extension of the city limits, is legal, valid, and binding, but is void as to that portion in which an attempt is made to appropriate $3,000 to the building of the Riverview bridge. The council might legally pass the first part of the ordinance and extend the city limits, but it had no power to appropriate that amount of money by ordinance without a vote of the people.    Had both subjects been equally within the power of the council to legislate upon, then the whole ordinance must have been held void, because no court could determine which subject was intended; but one subject being clearly within the power of the legislative body, and the other just as clearly *ultra vires*, the legislature will be presumed to have done only what they had the power to do, and especially where there is no difficulty in separating the subjects, as in this case.

"2. The dedication of the strip of land called Bridge street, by the owner of the land, was an absolute dedication, both present and future, for all the burdens and uses to which said land might be put for the purposes of a public way, and would embrace the uses and burdens incident to a city street when the same might be legally embraced within an incorporated city; and in contemplation of law the owner gave it out of his adjacent lands with a view to subjecting those lands to all the burdens which might follow from such a dedication.    The sidewalk tax was properly chargeable against the land of the plaintiff.

"I have not reached this latter conclusion without much hesitation and doubt; but from all the authorities examined — and I have examined many, very few, however, directly upon the point — I think the better reason, as well as the weight of authority, sustains this conclusion of law.

"The other city taxes were legally chargeable against the property of the plaintiff.

"While I do not place my findings in any sense upon the want of equity in the bill, I am by no means sure that a court of equity ought not to be governed in a case of this kind by

the fact that it does not anywhere appear that the plaintiff is being injured. The bill will be dismissed."

Section 9 of the act to incorporate cities of the second class provides "that no ordinance shall contain more than one subject, which shall be clearly expressed in its title." In the case of *Stebbins v. Mayer*, 38 Kas. 576, this court says with reference to this provision:

1. City ordinance —only one subject in title.

"The language of § 9 is an exact copy of the constitution of the state in relation to bills, with the exception that the word 'ordinance' is used where the constitution uses the word 'bill.' This provision of the constitution is universally recognized as being mandatory upon the legislature. . . . This provision of the statute is as binding upon cities as that of the constitution is upon the legislature in relation to its acts, and by its terms the statute has said that the title of an ordinance must be an index of what it contains."

This much can be said about this particular city ordinance, beyond criticism or doubt. Both the title to and the body of the ordinance contain two separate, distinct and independent subjects, having no connection with each other, and as easily distinguishable from each other as is a stack of wheat from the Argentine smelter. While this court has many times determined that the title of an act of the legislature was not broad enough to embrace all that was contained in the body of the act, and held that part not indicated by the title to be void, (see cases of *Bowman v. Cockrill*, 6 Kas. 311; *Comm'rs of Sedgwick Co. v. Bailey*, 13 id. 600; *Division of Howard County*, 15 id. 194; *Prescott v. Beebe*, 17 id. 320; *Swayze v. Britton*, 17 id. 625; *City of Eureka v. Davis*, 21 id. 578; *Woodruff v. Baldwin*, 23 id. 491; *The State v. Bankers' Association*, 23 id. 499; *Shepherd v. Helmers*, 23. id. 504; *Werner v. Edmiston*, 24 id. 147; *Philpin v. McCarty*, 24 id. 393; *The State v. Barrett*, 27 id. 213,) the exact question here presented has not been passed upon directly; and yet there are some indications of light upon the question, found in the following cases. In *Philpin v. McCarty*, 24 Kas. 393, Mr. Justice BREWER says:

"But two measures entirely foreign to each other cannot

be joined in one act. They must be presented separately, and a separate vote had upon each. . . . An assent to two independent matters jointly, will make neither of them a law. . . . This constitutional requirement . . . was introduced to prevent a certain abuse, and it should be construed to guard against that abuse. This abuse was this: ofttimes a matter of merit commanding general confidence was yoked to something unworthy, and by this union the latter was carried through on the strength of the former. This provision was designed to prevent this; to make every measure stand on its own merits, and to cut off omnibus legislation. These views are well supported by authority. The constitution of New Jersey thus states the reason for the rule: 'To avoid improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other.' The supreme court of Michigan say (*People v. Mahaney*, 13 Mich. 494): 'The practice of bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor advocates of all, and thus secure the passage of several measures no one of which could succeed upon its own merits, was one both corruptive of the legislature and dangerous to this state.' The supreme court of Iowa express the same idea thus (*The State v. County Judge*, 2 Iowa, 282): 'The intent of this provision of the constitution was to prevent the union in the same act of incongruous matters, and of objects having no connection — no relation.' Cooley, in his work on Constitutional Limitations, p. 143, uses this language: 'It may therefore be assured as settled, that the purpose of these provisions was, first, to prevent hodge-podge or log-rolling legislation.' "

In the case of *The State v. Barrett*, 27 Kas. 213, Mr. Justice VALENTINE, stating legal propositions, says:

" Where an act contains two separate and independent subjects, having no connection with each other, and the title to the act is broad enough to cover both, whether such an act or any portion of it has any validity has not yet been settled or determined by this court; but we think probably, and as a general rule, it has not."

The peculiarity of this ordinance is, that its title distinctly contains two separate and independent subjects, which are clearly expressed, as in its various sections. It is as square a

case as can be imagined under § 9 of the act incorporating cities of the second class; and the whole ordinance must be held void, unless the first section is saved by the want of power to pass the second. It is claimed, and so far as we are concerned frankly admitted, that the city council had no power to pass the second section of the ordinance, unless a proposition to grant aid to the construction of the Riverview bridge was first submitted to a vote of the electors of the city, and the council authorized by an affirmative vote to do so. Accepting this to its fullest extent, we then have a city ordinance whose title indicates, and its various parts contain, two separate and distinct subjects of legislation — one subject within the power of the council to legislate upon, the other subject wholly without the power of the council. As we have seen by our own reports that the express object of this constitutional provision and of § 9 of the act organizing cities of the second class is to prevent log-rolling legislation and a combination of subjects, by requiring that every legislative bill or city ordinance "shall not contain more than one subject, which shall be clearly expressed in its title," it would be the plain and natural meaning and import of the words used, that whenever it is manifest that such bill or ordinance does indicate by its title and contain in its sections two subjects entirely different and independent, the constitution is violated, without reference to anything else. If one of the subjects indicated by title and contained in the ordinance is not within the power of the city council, yet the very abuse that was attempted to be prevented by the law is used to secure the passage of § 1, the advocates of § 2 believing, perhaps, that they accomplished their purpose by supporting § 1. In other words, before the court can reach the question as to whether or not one of the subjects is without the grant of power to the city council to be regulated or legislated upon, the manifest violation of the constitution in another respect is apparent. And

2. Two subjects in title—void ordinance. if such an ordinance is void *in toto* because two subjects are grouped in one title and act, what practical good is to be accomplished by a further inquiry as to

these two separate and distinct subjects? Two subjects shall not be embodied in one act, to prevent certain evils of legislation — so that one cannot be an inducement to the passage of the other. Now if it should manifestly appear that a subject without the power was used as an inducement to pass one within the power, the two being embodied in one act, no court would hesitate to declare both void, even at the end of an investigation into the motives that induced favorable action by a majority of the legislature. How is a court of last resort to determine what influenced members of the legislature to vote for certain measures? Shall the determination of the very grave and important questions of the constitutionality of legislation be determined solely by evidence as to the motives of members of the legislature? We hesitate to announce any such conclusion.

It is said that the case of *The State v. Lancaster*, decided by the supreme court of Nebraska, (17 Neb. 85,) and also reported in 22 N. W. Rep. 228, is a very strong authority in favor of the validity of this ordinance. This is unquestionably true. If the Nebraska case is to be accepted as a proper interpretation of the constitutional provision, then it should control this case. The facts in that case were, that in 1883 the Nebraska legislature passed an act entitled "An act to provide for the registry, sale, leasing and general management of all lands and funds set apart for educational purposes, and for the investment of funds arising from the sale of such lands, being article one of chapter 80 of the Compiled Statutes; also, to repeal article three of said chapter 80." The court say:

"The whole purpose and tenor of the act relate to the sale and leasing of school lands, and the disposition of the funds arising therefrom. Article three of chapter 80 is no part of the act amended, nor does it relate to subjects embraced either in the original or amended act."

This is a clear statement that the body and title of the act embraced two separate and distinct subjects, having no neces-

sary connection with each other, and in this respect is as strong as the case at bar. The court also say:

"The attorneys for the relator claim that the house journals show that the house of representatives in 1883 refused to repeal article three of chapter eighty as an independent measure, the vote being 56 against 42 in favor of such repeal. This is not denied by the defendants, and may be considered as admitted. It is pretty clear, therefore, that the legislature was imposed upon, and article three of chapter eighty included in the repealing clause of the amendment, referred to as though it has been a part of the statute amended. It had no connection with it, however."

The court then further state:

"The rule is well settled that when the title to an act actually indicates, and the act itself actually includes two distinct objects, where the constitution declares it shall embrace but one, the whole act must be treated as void, from the manifest impossibility of choosing between the two, and holding the act valid as to one and void as to the other." (Citing Cooley on Constitutional Limitations, 147.)

The rule stated is the requirement of a plain mandatory provision of the constitution of this state; that provision forbids the legislature to embrace two subjects in one enactment, and the universal expression of various constitutions and of the supreme courts of the states, whose organic law embraces this provision is, that certain evils of legislation are prevented by it, and hence the true reason why an act, whose title indicates and provisions include two distinct subjects, is void, is because this is expressly forbidden by the constitution, and not from a manifest impossibility in the court choosing between the two. The court has no right to choose between the two. Whenever it manifestly appears that two separate and distinct subjects are embraced in the title and included in the body of an enactment, the whole force of a mandatory constitutional provision is weakened, broken and frittered away, when courts begin to inquire and undertake to determine whether one of the subjects is without the power of the legislature, or whether one is used as an inducement to the passage

of the other.   Take this Nebraska case, and it is an admitted fact that at the same session of the legislature at which the act in question was passed, the house of representatives had refused to repeal article 3 of chapter 80 as an independent measure.   It had the constitutional right to repeal it, but refused to do so on the merits.   The repeal was then combined with the other measure, and the invalidity of the repeal thus effected is not placed upon what appears to us to be its most evident and controlling reason, to wit, that the whole act is void for embracing in the title and body two distinct subjects, but is based upon the principle that a law not connected with the subject of the act amended cannot be repealed by a provision in the nature of a rider upon an independent act.   This is a wholesome rule in itself, and might apply in other cases, and we make no criticism upon it, but decline to accept it as controlling the other subject discussed.

It is further said in the Nebraska case, that the constitutional provision applies only in cases in which it is impossible from an inspection of the act itself to determine which act, or rather, which part of the act, is void, and which is valid. Where this can be done, the rule is, that the constitutional provision does not apply, unless it shall appear that the invalid portion was designed as an inducement to pass the valid. Now if the invalid portion of a statute can be used as an inducement to pass the valid, then the legislature is practicing the very evil that this organic command was intended to prevent.   The case seemingly assumes that this could not be done, because, as we suppose, those members of the house who favored the repeal of article 3 of chapter 80 are conclusively presumed to know the invalidity of the repeal.   Why not apply this presumption to all members of both houses in all cases in which the title and sections of a proposed act indicate and embrace two separate subjects?   The Nebraska case differs from the one at bar in this essential particular: in that case there is no question but that the legislature of the state had power and control over both subjects; but here it is con-

tended, and it is probably true, that the city council had no power to make an appropriation to aid in the construction of the bridge, unless the question had been submitted to a vote of the electors of the city, and it was authorized by an affirmative vote to do so. In one case, the legislative power was not rightfully exercised; in the other, there was no original legislative power. We are not disposed to indulge in many refined distinctions about the effect and operation of this constitutional provision. We think the better and safer way to apply it is, that when it manifestly appears from the perusal of an act of the legislature or an ordinance of a city of the second class that the title indicates and the body of the act embraces two distinct and separate subjects, this 3. Title containing two subjects—practice in supreme court. fact of itself and by its own force, and without reference to any other or further considerations, renders the whole act or ordinance unconstitutional and void. This seems to better accord with the aim and purpose of the constitution and the act organizing cities of the second class, than to adopt the theory of the Nebraska decision, and proceed under it to first determine whether or not the title indicates and the act contains two separate and distinct subjects, and if it does, to then inquire whether one or both are within the power of the body to legislate upon, and then to endeavor to ascertain whether or not one was used as an inducement to the passage of the other. We think the ordinance of the city of Wyandotte attempting to extend the city limits so as to include this land, and making an appropriation to aid in the building of Riverview bridge, is void *in toto;* and hence the land in question was not included within the limits of the city of Wyandotte by the force of that ordinance, and was not subject to taxation by the city.

In this view it is not necessary to consider the questions raised as to the dedication by Splitlog of a public road through this land in Riverview bridge, and whether by such dedication this road became a city street, and as to the legality of the sidewalk tax, because it will not be contended that if no

part of the tract was within the city limits, and it had never been subdivided into lots and blocks, or platted, a sidewalk tax could be levied thereon.

It is recommended that the judgment of the district court be reversed, and the cause remanded, with instructions to render a judgment on the facts agreed upon and found in favor of the plaintiff in error.

By the Court: It is so ordered.

HORTON, C. J., and JOHNSTON, J., concurring.

VALENTINE, J.: I concur in the decision of this case; but I do so with the understanding that the decision does not limit or affect the former decisions of this court holding that where the subject of an act is clearly expressed both in the body of the act and in its title, but something foreign to this subject is contained in the body of the act, and not in its title, the foreign matter is necessarily void and the remainder of the act may be valid. The decisions referred to are the following: *Division of Howard Co.*, 15 Kas. 215; *Swayze v. Britton*, 17 id. 625; *The State v. Bankers' Association*, 23 id. 499; *Shepherd v. Helmers*, 23 id. 504; *The State v. Barrett*, 27 id. 215; *M. K. & T. Rly. Co. v. Long*, 27 id. 684; *In re Wood*, 34 id. 645.