HAROLD R. BECHTEL, Appellant, v. BOARD OF SUPERVISORS of Winnebago County, Iowa, et al., Appellees; SELMER RYGH, Intervener.

No. 41997.

DECEMBER 12, 1933.

Carl H. Lambach, for appellant.

Tom Boynton, for appellees.

E. M. Sabin, for intervener.

KINTZINGER, J.—In 1918, 1920, and 1924 the defendant county constructed drainage ditches in various districts in Winnebago county, and sold bonds to the plaintiff and others to pay the cost of their construction. Assessments were duly and timely levied against the property in various districts to redeem the bonds when the assessments were collected. The assessments and other general taxes were not all paid and the land was sold to the highest bidder at a scavenger sale and certificates were issued therefor.

The bonds issued were "a lien upon, and  *  *  *  payable *solely* out of the proceeds of the special assessments  *  *  *  levied;  *  *  *  and the special assessments were irrevocably pledged. *  *  *  For the performance of all the covenants, recitals and stipulations of the bonds; and for the collection and application of the assessments  *  *  *  the faith and resources of said County were pledged."

The facts in the case were all agreed on by stipulation under which it appears that all proceedings in the levying of the assessments, issuing the bonds, collecting that part of the assessments paid, and advertising the sale and selling the land for the unpaid assessments, were all duly made, and were regular, valid, and legal. This action is brought to compel the county to effect a reassignment and repossession of the tax sale certificates under section 7590-c1 of the Code, which authorizes the board of supervisors so to do when the tax sale certificates were issued for less than the amount necessary to pay the outstanding bonds.

The only question for determination, therefore, is whether or not the statute authorizing counties to repossess tax sale certificates is "mandatory" or "permissive" and discretionary only. Section 7590-c1 provides substantially as follows:

"When land in a drainage  *  *  *  district  *  *  *  is subject to an unpaid assessment and levy for drainage purposes and has been sold for taxes the board of supervisors of that county, *  *  *  may purchase the certificate of sale issued by the county treasurer by depositing with the county auditor the amount  *  *  *

to which the holder of the certificate would be entitled if redemption was made at that time, and thereupon the rights of the holder of the certificate and the ownership thereof shall vest in the board of supervisors, * * * in trust for said drainage district."

Section 7590-c4 authorizes the county to issue warrants for said certificates against the drainage district, but if there are not sufficient funds in the district for that purpose the board is authorized to borrow sufficient money for that purpose on a warrant for that amount drawn on the funds of the district.

It was stipulated that the county treasurer advertised the land for tax sale at two successive years, and at a scavenger sale the third year. He sold the land to the persons now in possession of the certificates, and who are now rightfully entitled to apply for a deed. The amount bid was not sufficient to redeem the bonds. The plaintiff offered to loan the county sufficient money on county warrants to enable it to effect a reassignment of all of the tax sale certificates.

The bonds are payable *solely* out of the proceeds of the special assessment which was a lien on the real estate. The requirements of the bonds were all met by the county, but the amounts received from the tax sales were not sufficient to pay the bonds in full. There was no lack of diligence or negligence on the part of the county, in failing to collect the assessments, and the bonds do not require the county to make up the deficiency. Plaintiff contends that the terms of the statute providing that the county "may" purchase the sale certificates is mandatory, and that the word "may" should be interpreted as "shall" or "must". The solution of this case depends entirely upon the meaning and interpretation of section 7590-c1.

Paragraph 2 of section 63 of the Code provides that:

"Words and phrases shall be construed according to the context and the approved usage of the language."

There are no technical words or phrases presented for construction, and therefore the word "may" as used in this statute must be construed according to the context and approved usage of the word in connection with the subject relating to the purchase of sale certificates. The legislation here contemplated authorizes the county to effect a reassignment of tax sale certificates.

The ordinary meaning of the word "may" is "to have permission; to be allowed; and to have power or ability."

The word "may" is sometimes interpreted to mean "shall" or "must", where, from a consideration of the legislation and its context, it appears that the legislature intended to impose a positive duty, rather than a discretionary power. A mandatory construction will usually be given the word "may" when public interests are concerned, but never for the purpose of creating a private right. 59 C. J. 1082, and cases cited.

As a general rule, the word "may" when used in a statute is permissive only and operates to confer discretion. The great weight of American authority is that the word "may" when used in a statute is permissive only, and operates to confer discretion, unless the contrary is clearly indicated by the context of the statute. 59 C. J. 1079, section 635; 39 C. J. 1393; 25 R. C. L. 769, section 16; Downing v. City of Oskaloosa, 86 Iowa 352, 53 N. W. 256; Kelley v. City of Cedar Falls, 123 Iowa 660, 99 N. W. 556; Van Shaack v. Robbins, 36 Iowa 201; Queeny v. Higgins et al., 136 Iowa 573, 114 N. W. 51; Parish & Porterfield v. Elwell, 46 Iowa 162; Rowenhorst v. Johnson, 48 S. D. 325, 204 N. W. 173; Henry v. Meade County Bank, 34 S. D. 369, 148 N. W. 626; Wadsworth v. Eau Claire County, 102 U. S. 534, 26 L. Ed. 221; and numerous cases cited in 59 C. J. p. 1079 under section 635.

Sometimes the words "shall" and "must" are considered directory only and not mandatory. State ex rel. Weir v. Davis County, 2 Iowa 280; Parish & Porterfield v. Elwell, 46 Iowa 162; Jordan v. Wapello County, 69 Iowa 177, 28 N. W. 548.

In Downing v. City of Oskaloosa, 86 Iowa 352, 53 N. W. 256, we said:

"It is insisted * * * that the word 'may,' used in the statute, is to be construed to mean 'shall' or 'must'; that the power therein given is mandatory, and is not simply permissive or discretionary. * * * The rule of construction is well stated in 14 Amer. & Eng. Enc. Law, p. 979, thus: 'the word "may" in a statute is sometimes used in a mandatory, and sometimes in a directory and permissive, sense. * * * *It is only where it is necessary to give effect to the clear policy and intention of the legislature that it can be construed in a mandatory sense, and, where there is nothing in the connection of the language or in the sense and policy of the provision to require an unusual interpretation, its use is merely permissive and discretionary.'* Black's Law Dict. tit. 'May.' " (Italics ours.)

The word "may" in the statute there under consideration was held to be permissive and discretionary.

In Kelley v. Cedar Falls, 123 Iowa 660, 99 N. W. 556, we said:

"The controlling question for our determination is whether its provision that 'vertical curves of grade "may" be used * * * ' was 'mandatory' and required that the grade of alleys conform to the natural surface of the ground for the convenience of owners of abutting property, or was permissive and discretionary only. The appellant contends that the provision was mandatory, and that the word 'may', as used therein, should be construed 'must' or 'shall'. The statute provides that words and phrases shall be construed according to the context and the approved usage of the language * * * The primary or ordinary meaning of the word 'may' is undoubtedly permissive and discretionary. Century Dict. And in a statute or ordinance it can be construed in a 'mandatory' sense only 'when such construction is necessary to give effect to the clear policy and intention of the legislature; *and where there is nothing in the connection of the language or in the sense or policy of the provision to require an unusual interpretation, its use is merely permissive and discretionary.*' Downing v. City of Oskaloosa, 86 Iowa 352, 53 N. W. 256." (Italics ours.)

In Van Shaack v. Robbins, 36 Iowa 201, loc. cit. 205, we said:

"Where the word [void] is used to secure a right to or confer a benefit on the public, it will, as a rule, be held to mean null and incapable of confirmation. But if used respecting *the rights of individuals capable of protecting themselves,* it will often be held to mean 'voidable' only. Just as the word 'may' will be construed to mean 'must' where that appears to be the intent of the statute, and generally, *where the public interests and rights are concerned. * * * But if private rights only are spoken of it will be interpreted as 'may' or 'permissive' at discretion.*" (Italics ours.)

Statutes authorizing school boards to transport pupils to and from school have quite universally interpreted the word "may" as *permissive* and *discretionary* only. Such cases hold that unless the terms of the statute are imperative, they are usually construed as vesting the school officers with a discretionary power only. Queeny v. Higgins, 136 Iowa 573, 114 N. W. 51; Pasadena High School v.

Upjohn, 206 Cal. 775, 276 P. 341, 63 A. L. R. 408; and numerous cases in exhaustive note in 63 A. L. R. 418.

In Rowenhorst v. Johnson, 48 S. D. 325, 204 N. W. 173, the court said:

"It is the general rule, and one which has been recognized by this court, that the word 'may' when used in a statute is permissive only."

While the statute authorizes the board of supervisors to effect a reassignment of the tax sale certificates, and while such action might be for the benefit of the bondholders, it cannot be said to be *solely* for the public benefit. The county would not necessarily receive a benefit from such action, because the drainage bonds are by their very terms payable *"solely"* out of the proceeds of the assessment levied and collected from the property assessed. The county complied with every requirement of the statute in attempting to collect the assessment levied. It offered the property for sale at three different times. There were no bidders at the first or second sales. Under the statute it was then required to sell at "scavenger sale", the following year. All the necessary steps were taken and notices were duly published before the sale.

The board of supervisors was authorized to purchase the certificates at any one of the tax sales. Section 7589. If the provisions of section 7590-c1 should be considered mandatory, then for the same reason section 7589 should also be considered mandatory. Section 7589, however, cannot be so considered or it would not have been necessary to enact section 7590-c1, authorizing a repurchase of the tax sale certificates. The provisions of that section simply created another method of authorizing the county to purchase the property at tax sale. The authority granted in each of these sections is of a similar import, i. e., each authorizes the purchase of tax sale certificates. The latter section simply extends the authority already granted to include the additional power of purchasing the certificates after a sale to others. If the first section could not be considered mandatory, neither could the second, because both, in effect, grant a similar right. The ultimate purpose of each is to enable the county to get possession of the tax sale certificates if they so desired. Both sections grant a permissive right. There is no language in either making it a positive duty of the county to purchase the tax sale certificates, and without such language, express or implied, the word

"may" in section 7590-c1 must be construed as permissive and discretionary only.

Section 7590-c6 makes it the duty of the county treasurer to report immediately all property sold at tax sales for less than the amount due thereon. This statute provides: "The county treasurer shall immediately report that fact to the board of supervisors." Thus by this section the mandatory legislative intent is shown by the use of the word "shall." If the legislature also intended to make the provisions of section 7590-c1 "mandatory", it is reasonable to presume it would also have used the word "shall" instead of "may" in that section.

It does not appear that any public right would be protected by exercising the power of repurchase authorized in either section, and there is no assurance that even private individuals would be benefited thereby, as there is no evidence in the record in any manner tending to show that any more would be realized by a reassignment of the tax sale certificates.

Some doubt might have been cast upon the intention with which the word was used if the bondholders were not enabled to protect themselves; but a sale of this property was duly advertised at three different times. No bids were received at the first two sales, and at the scavenger sale, at the end of the third year, the property was sold to the highest bidder as required by law. Section 7246. Nothing prevented the bondholders individually or collectively from buying the certificates at one of the tax sales. By so doing they would have been enabled directly to receive any and all benefits that could possibly have been derived by the indirect method of having them purchased by the county. As the bondholders had ample opportunity of protecting their own interests by purchasing the property at tax sale, they cannot now complain because the board of supervisors did not do so under section 7590-c1. They were under no obligation so to do. The supervisors might have concluded that the county could sustain a loss by repurchasing the certificates as requested.

In general, statutory provisions directing the mode of proceeding by public officers which, if disregarded, would not injuriously affect the rights of others, are not regarded as mandatory. "Where the words are affirmative and relate to the manner or time in which power or jurisdiction is to be exercised * * * they have been construed to be directory." 25 R. C. L. 769, section 16.

Nothing in the context of the act indicates an intent contrary to the ordinary permissive sense in which the word "may" is generally construed.

From the entire context of this act we are satisfied that the word was used in merely a permissive sense.

We believe the judgment of the trial court was correct, and it is hereby affirmed.

ALBERT, C. J., and STEVENS, ANDERSON, KINDIG, MITCHELL, and CLAUSSEN, JJ., concur.