CLARK v. BROWN ET AL.

70 139|
105 478|

1. **Riparian Rights:** WATER-POWER AND ADJACENT LOTS: SEVERANCE OF LOTS FROM INTEREST IN POWER: NOTICE. Where a company owned a portion of the lots abutting on a dam, and also the controlling interest in the water-power, but was not the owner of any mill or machinery which was propelled by water taken from the dam. and, upon the foreclosure of a mechanic's lien against the company, the decree provided for the sale of its lots, and also of its interest in the dam, bulkheads and races, and the water-power created by them, not as appurtenant to the lots, but as a separate property, and the lots were sold on execution thereunder to B., and the water-power to H., and the deeds to them were duly recorded, and afterwards all the property was sold on execution against B., on the theory that the lots to which he held title ran to the thread of the stream, and carried with them the water-power and the land on which it was built, and plaintiff procured a deed under such sale, *held* that it was competent for the court by its decree in the foreclosure case to so divide the property as to sever that portion of it constituting the water-power from the lots, and that, after a sale of the water-power to H., pursuant to that decree, under which, also, B. procured his title to the lots, and after the recording of the deeds, all persons were charged with notice of the terms of the decree under which H. and B. held, including the division of the property, and that plaintiff took under his sheriff's deed no interest in the water-power which he could assert against H.

2. **Mistake of Law:** EXPENDITURE FOR ANOTHER'S BENEFIT: RECOVERY IN EQUITY. Where one has in good faith, under a mistake of law as to his title, expended money in the preservation and improvement of property which a court of equity finally decrees to belong to another, it will in the same action, upon a proper showing, charge the property with a judgment for the amount of such expenditures in favor of the party who made them, especially where they were made with the implied consent of the owner of the property. (Compare *Goodnow v. Moulton*, 51 Iowa, 555.)

3. **Tax Deed:** INVALID AGAINST CO-TENANT. A tenant in common cannot acquire a tax title to defeat the interest of his co-tenant.

*Appeal from Linn District Court.*

FRIDAY, OCTOBER 29.

PLAINTIFF brought this action to quiet in him the title to certain real estate in the city of Cedar Rapids. The district

court entered judgment, granting to plaintiff the relief demanded. The material facts are stated in the petition. Defendants appeal.

*Rickel & Bull* and *Blake & Hormel*, for appellant.

*Hubbard, Clark & Dawley* and *Boal & Jackson*, for appellee.

REED, J.—Previous to the ninth of March, 1874, the Cedar Rapids Water Power Company owned fifty-six lots in the city of Cedar Rapids, thirty-one of which are situated on the east side, and the remainder on the west side, of the Cedar river, and all of which are bounded by the river. There was a dam in the river, with bulk-heads, and head and tail races, which created a valuable water-power. Said company also owned fifty-nine sixty-fourths of this dam and water-power. J. J. Snoufer recovered a judgment against the company for more than $27,000. This judgment also established and foreclosed a mechanic's lien on said lots and the interest of the water-power company in the dam and water-power. Immediately after the judgment was obtained, it was assigned by Snoufer to N. B. Brown. A special execution was subsequently issued on the judgment, on which the sheriff sold the property. Before making the sale, the officer caused the property to be appraised. The lots were appraised separately, the appraisement ranging from $30 to $1,100 per lot. The interest in the dam and water-power was appraised at $10,000. Brown, the owner of the judgment, bid in the lots at two-thirds of the amount at which they were appraised. The interest in the dam and water-power was offered for sale separate from the lots, and the defendant H. E. Higley bid it in at two-thirds of the amount of the appraisement. The sheriff executed to Brown a deed of the lots, and to Higley a deed of the interest in the dam and water-power, and their deeds were duly recorded. Higley attended the sale, and bid

on the interest in the dam and water-power, at the solicitation of Brown, who represented to her that it was a valuable property and would be a good investment. He was present when her bid was accepted, and he subsequently received and retained the money paid by her under her bid. The Johnson County Savings Bank subsequently obtained a judgment for more than $10,000 against Brown, on which an execution was issued, which was levied on the lots; also on the dam and water-power. The whole of the property was bid in at the same sale by a trustee for the bank. Plaintiff purchased the certificate of sale given by the sheriff, and, after the expiration of the period for redemption, he obtained a sheriff's deed of the property, and this action was brought to quiet his title under that deed.

I. As between plaintiff and the defendant Higley, the principal question in dispute is as to the extent of the right

1. RIPARIAN rights: water-power and adjacent lots: severance of lots from interest in power: notice.

acquired by the former under the sheriff's deed to him. His position is that, as the lots are bounded by the river, they extend to the thread of the stream, and consequently Brown acquired title, by his purchase and deed, to the land under the dam, as well as to that on the banks, and that the dam and power are merely appurtenant to the land, and passed by the conveyances. He admits that Brown would be estopped from denying that Higley acquired title under her purchase by the facts that he induced her to bid on the property, and subsequently received and retained the money paid by her under the bid; but he contends that whatever equitable right she acquired by her bid, and the payment of the money, was created by these circumstances, and not by the deed from the sheriff to her, and that the record of that deed did not impart constructive notice of her equity; and consequently, as his purchase was of the interest which Brown appeared by the record to own, and as he had no notice of Higley's right, he took the property discharged of that right. On the other hand, defendant contends that the Cedar river is a navigable

stream, and consequently the lots extend only to the high-water mark on its banks. Or, if that position cannot be maintained, she denies that the dam and water-power are appurtenant to the lots, but claims that they constitute a separate and distinct property.

The question whether the river should be regarded as a navigable stream has been elaborately argued by counsel; but, in the view we have taken of the case, it is not necessary to determine it. The determination of the question would be attended with many difficulties, and, in our opinion, the rights of the parties are dependent on other considerations. It is doubtless true that the sale and conveyance of a mill, or the land on which it is situated, would carry the dam or water-power by which the mill is operated, if it is owned by the same party, even though it be situated upon a different tract of land, and be not specifically described in the conveyance. See *Morgan v. Mason*, 20 Ohio, 401. It was held in that case that the right to maintain the dam, and use the water therefrom to operate the mill, constituted an easement, which was attached as an appurtenant to the mill property, and that the judgment under which it was sold was a lien upon the easement as well as upon the property to which it was appurtenant, and that it passed with the property under the sale. In this case, however, the water-power company was not the owner of any mill or machinery which was propelled by the water taken from the dam. It owned a portion of the lots abutting on the dam, and fifty-nine sixty-fourths of the water-power. Other lots were owned by other proprietors, and on some of them were situated mills, and other manufacturing establishments; which were run by the water drawn from the dam. The proprietors of some of these establishments also owned interests in the dam and water-power, while others paid a rental to the owners of the dam for the water used by them. One of the bulk-heads of the dam stands upon one of the lots which was owned by the

company, while that upon which the other bulk-head is built is owned by another party.

Perhaps these considerations alone would not give to the dam and power the character of a separate and distinct property. If it should be conceded, however, that the lots originally extended to the middle of the stream, and that they, together with the dam, bulk-heads, races and water-power, constituted one property, it was competent for the owners to so divide it as to sever the dam, bulk-heads, races and power from the remainder of the lots. It was also competent to effect this division by a sale under judicial process; and we think this was effected by the sale under which defendant and Brown purchased.

As stated above, the Snoufer judgment was rendered in an action brought for the enforcement of a mechanic's lien. The judgment established and foreclosed the lien on the lots, and on the dam, bulk-heads, races and water-power. These latter were as specifically described in the judgment as were the lots. The lien was established and foreclosed upon them, not as mere appurtenances to the lots, but as a distinct and separate property; and it directed that they be sold as such. The execution followed the judgment in this respect. It commanded the sheriff to sell the lots, and the dam, bulk-heads, and races, and the water-power created by them, for the satisfaction of the debt; and, in obedience to this mandate, he offered them for sale as distinct from the lots, and they were so bid in by the defendant.

By the judgment, the execution and the sale, then, they were treated as constituting a property distinct and separate from the lots, and the extent of the interests acquired by defendant and Brown under the sale is determined by this fact. The sale of the dam, bulk-heads and races was necessarily a sale of the ground on which they are situated. The judgment treated them, not only as a separate property, but as real estate, and in this respect it was followed by the execution, and was so regarded in the sale. We need not inquire

as to the correctness of the judgment in that respect. It may have been erroneous, but it clearly was not void, and its correctness cannot be questioned in this collateral proceeding. Plaintiff's title rests on that judgment, and the execution and sale thereunder. He is charged with notice of any fact shown by the judgment which affects the title which was transferred by the sale under it. He had notice, then, when he purchased the property, that the judgment treated the dam, bulk-heads, races and water-power, as constituting a property distinct from the lots, and that it directed them to be sold as such. The sheriff's deed to defendant was recorded when plaintiff made the purchase. This record imparted notice to him that the property had been sold in the manner authorized by the judgment. We think, therefore, that he did not acquire title to the portion of the property covered by the deed from the sheriff to defendant, but that her title to that property is perfect as against him.

II. After plaintiff received the deed under which he claims, he expended a large amount of money in making repairs on the dam; and he prayed in his petition that, in case he should be adjudged not to be the owner of the property, a lien be established upon it in his favor for the amount so expended. We think he is entitled to this relief. The expenditures were necessary for the preservation of the property from decay and destruction by the elements. They were made by plaintiff in good faith, and in the honest belief that he was the owner of the property, and they were made under such circumstances as satisfy us that defendant knew they were being made, and she made no objection to them. If the repairs had not been made, the value of the property would have been greatly impaired. Defendant has the full benefit of the expenditures, and equity will infer a promise by her to reimburse plaintiff for them. The case, in this respect, is within the principal of *Goodnow v. Moulton*, 51 Iowa, 555, and the subsequent cases which follow it.

2. MISTAKE of law: expenditure for another's benefit: recovery in equity.

III.  The defendants W. D. Watrous & Co. obtained a tax deed of the property during the pendency of the action. By the judgment of the district court, this deed was canceled, and plaintiff's right to redeem from the tax sale was established.  They appealed from that part of the judgment, but did not appear in this court to argue their appeal.  We will assume, therefore, that they have abandoned it.  But defendant Higley is entitled to redeem the portion of the property owned by her from the tax sale.  Watrous & Co. owned an undivided interest in the property when they acquired the tax title.  A tenant in common cannot acquire a tax title to defeat the interest of his co-tenant.  *Flynn v. McKinley*, 44 Iowa, 68; *Austin v. Barrett*, Id., 488.

3. TAX DEED: invalid against co-tenant.

The judgment will be reversed on defendant Higley's appeal, and the cause will be remanded, with directions to the district court to enter a judgment in harmony with this opinion; or, if the parties so elect, such judgment will be entered in this court.

REVERSED.