SUE A. HOYT, Plaintiff and Appellant, v. F. S. BROWN, Treasurer of Sac County, Iowa, Defendant and Appellee.

**Drainage:** IRREGULAR PROCEEDINGS: REMEDY. The statute providing an appeal for the review of error and irregularity in drainage proceedings is exclusive, and an independent action for that purpose will not lie, except upon a showing of utter want of jurisdiction.

**Same:** ESTABLISHMENT OF DISTRICT: FINDING OF NECESSITY: SUFFICIENCY. The finding of the board of supervisors that the establishment of a drainage district is a necessity satisfies the statute in this respect and is conclusive.

**Same:** BOARD PROCEEDINGS: ADJOURNMENT OF BOARD. Where the minutes of a board of supervisors at the time of its regular session appear of record for successive days, the fact that at the close of each day's session the auditor appended to the minutes "Board Adjourned" did not destroy the continuance of that particular session; as the word adjourned may mean to take a recess from day to day, or for an indefinite period.

**Same:** SERVICE OF NOTICE: WAIVER OF DEFECT. A mere defect in the notice, or return of service thereof, in drainage proceedings is

cured by the voluntary appearance and filing of a claim for damages by the property owner.

**Same:** TAX SALE: INJUNCTION: REDEMPTION.  Where it appears that a tax sale certificate was purchased and held by another with the knowledge and for the benefit of the landowner, he is not entitled to an injunction restraining the county treasurer from issuing a deed thereunder:  And a purchase of the certificate by the owner operates as a redemption from the sale and eliminates further controversy as to the validity of the tax.

*Appeal from Sac District Court.*—HON. F. M. POWERS, Judge.

FRIDAY, DECEMBER 15, 1911.

SUIT in equity.  Plaintiff prays that certain proceedings of the board of supervisors in the establishment of a drainage district be held void, and that taxes assessed in pursuance thereof be held illegal, and that a purported tax sale of plaintiff's lands for the payment of such taxes be held void, and that the tax sale certificates be canceled, and that the defendant treasurer be enjoined from issuing deeds thereunder, and other relief.  The trial court dismissed the petition.  Plaintiff appeals.—*Affirmed.*

*Chas. D. Goldsmith* and *J. S. Lothrop,* for appellant.

*R. L. McCord,* County Attorney, and *W. A. Helsell,* for appellee.

EVANS, J.—The plaintiff is a resident of Carroll county, and is the owner of four hundred and eighty acres of land in Sac county.  In 1906 and 1907, certain proceedings were had in such county in the establishment of drainage districts Nos. 5 and 11.  Some portions of plaintiff's land were included within each of such districts.  In each proceeding some benefits were assessed against portions of plaintiff's land.  Plaintiff's lands were sold at tax sale for

the special taxes so assessed. No appeal was ever taken by plaintiff from the action of the board of supervisors in such drainage proceeding; nor was any objection ever made thereto pending the proceedings, except that a claim for damages was filed in one proceeding. The treasurer of Sac county is the sole defendant in this case. The remedy sought is a permanent injunction. The contention is that all the proceedings of the board of supervisors of Sac county were wholly without jurisdiction, and therefore wholly null and void. The record is voluminous. Appellant's contentions are concisely summarized by her counsel in argument, as follows:

### Issues in the Case.

First. The board of supervisors was without jurisdiction to establish said drainage districts, in this:

(a) The proceedings for these ditches were commenced and prosecuted to completion under the provisions of chapter 68, Laws of the Thirtieth General Assembly, providing, from and including the petition, for the reclamation of a water-waste body, or district of land subject to overflow, or otherwise too wet for cultivation, and, as the lands within these ditch districts were not, in its entirety, nor in the several subdivisions thereof, of the character described in the law, the supervisors were without jurisdiction to proceed in the case under the petition submitted therefor.

(b) The territory included within these ditch districts, every acre of it occupied by cultivated farms long in successful operation, absolutely free from water trouble in the way of overflow, or otherwise preventing cultivation, a small portion thereof probably needing drainage only of water falling or coming thereon in times of continuous rains, provision for which is expressly designed and provided in chapter 2, title 10, of the Code, and, as the petition required by section 2 of that law was not presented to the supervisors, for such drainage, they were without jurisdiction to proceed with the construction of said ditches.

Second. That no survey of the territory of the alleged drainage districts, respectively, was ever made by an engineer appointed by the board of supervisors therefor, as required by section 2, chapter 68, 30th G. A.

Third.   That no report of any engineer of a survey of said alleged drainage districts, respectively, with plats thereof, was ever made, as required by section 2 of the law last above cited.

Fourth.   That no notice of a meeting of the board of supervisors for a hearing upon the petition and a return and recommendation of an engineer of an alleged survey of said drainage districts, respectively, was ever served upon appellant, as required by section 3 of the law last above cited.

Fifth.   That at no time during the alleged proceedings for the establishment of said districts, respectively, did the said board of supervisors determine, approve, and adopt any plan for said ditches and districts, respectively, as required by section 3 of the law last above cited.

Sixth.   That at no time in the proceedings for the establishment of said alleged districts, respectively, was there a determination and finding by said board of supervisors that the lands comprising the same were, as districts or bodies of land, subject to overflow, or too wet for cultivation, as required by sections 2, 3, and .5 of the law last above cited.

Seventh.   That no permanent survey of said alleged drainage districts was ever ordered by said board of supervisors, or made, in said ditch proceedings, respectively, as required by section 6 of the law last above cited.

Eighth.   That no assessment of benefits alleged to accrue to the lands comprising said drainage districts, respectively, was ever made by a commission for the classification and assessment of benefits upon such lands appointed thereto by said board of supervisors, as required by section 12 of the law last above cited.

Ninth.   That no notice of a hearing before said board of supervisors upon a report of an alleged commission upon classification and assessment of benefits of, and upon the lands of said drainage districts, respectively, and in the proceedings for the establishment of each of said districts, was ever served upon appellant, as required by section 12 of the law last above cited.

Tenth.   That on the dates, respectively, June 13, 1906, November 14, 1906, January 17, 1907, February 5, 1907, February 20, 1907, March 28, 1907, April 15, 1907,

April 16, 1907, and June 5, 1907, when records were made purporting to show meetings of and acts by said board of supervisors, relating to said drainage districts, respectively —acts important and necessary in proceedings for the establishment of drainage districts and the levy of assessments as a tax upon the lands thereof for the cost of the construction of ditches therein under the law therefor— said supervisors were not in session as a lawful board.

Eleventh.    That the boundaries of said drainage districts, respectively, as reported and recommended by the engineer alleged to have surveyed the same, and the assessment of the alleged benefits thereto, as returned by the respective commissioners upon classification and benefits, included and was assessed upon a fractional part only of the lands of plaintiff in section 5, to wit, upon a part of each forty-acre subdivision thereof, while the tax levied by said supervisors upon said lands was upon each of said forty-acre tracts entire, and each tract so taxed was sold for the collection of the same.

Twelfth.    That the establishment of said drainage districts and the construction of ditches therein, respectively, were purely private enterprises, conceived and consummated for the sole benefit of a few tracts of land through or along which said ditches were made to pass; the public having no interest therein, and deriving no benefit therefrom.

Thirteenth.    That the lands of plaintiff in said drainage districts, respectively, can derive no benefit or advantage in any particular or degree whatever from the construction of said respective improvements, and no part of said lands was in a condition inimical to the health of the community, or the occasion of inconvenience to the public.

Fourteenth.    That the said alleged drainage districts, respectively, as territories or bodies of land, were not in a condition productive of ill health in the community, not in any degree occasioning inconvenience to the public, and the construction of said improvements was not conducive to the public health, convenience, or welfare, or public benefit or utility.

Fifteenth.    As to district No. 11, count 3, of the petition.    The proceedings of said supervisors in levying an additional assessment upon the lands of plaintiff within said district for the cost of the construction of the said ditch

therein, and the proposed sale of said lands for the collection of such additional tax, for which a restraining order is prayed, all matters set out as issues herein in paragraphs first to thirteenth, both inclusive, apply hereto, and further as to said count 3 of the petition.

Sixteenth.  That the said plaintiff had no notice of the levy of an additional tax upon her said lands for the cost of the construction of the ditch in said district No. 11, nor of any such assessments, nor of the purpose of the supervisors to levy thereon such additional tax, and no opportunity was afforded her for objections thereto.

I.    The initial defect upon which much reliance is placed is that the proceedings complained of were had under chapter 68 of the Laws of the Thirtieth General Assembly, otherwise known as sections 1989-a1—1989-a47 of the Code Supplement.  It is urged that the territory included within this district was not wholly waste and wet land, but that it comprised cultivated farms, of which only limited portions required drainage.  It is urged, therefore, that the drainage proceedings in relation thereto should have been prosecuted under chapter 2, title 10, of the Code, otherwise known as sections 1940-1947.  To sustain this contention would be to overturn practically all the drainage proceedings which have been had in this state for several years.  Practically all the proceedings which have come before us for review since the enactment of chapter 68 of the Thirtieth General Assembly have been prosecuted under such chapter.  The applicability of such statute to the particular case has never before been questioned.  Necessarily, it devolves upon the petitioners in any proceeding to set forth the facts essential to the maintenance thereof.  Such facts, being found by the board of supervisors, fix its jurisdiction to proceed in the manner pointed out by the statute.  Such was the course followed in these proceedings.  It was sufficient to answer the call of the statute.  The statute provides a method of direct review by appeal of all such

1. DRAINAGE: irregular proceedings: remedy.

proceedings. Until such review is had, the finding of the board must be deemed conclusive.

The plaintiff has chosen to assail the proceedings, not by appeal, but by this independent action. In such an action she can not have the benefit of a mere review of the regularity of the proceedings. She can only prevail by showing want of jurisdiction. The statute especially provides that the remedy by appeal shall be exclusive, and we have held repeatedly that in no other way can relief be had against mere error and irregularity in the proceedings. *Wood v. Hall,* 138 Iowa, 308; *In re Lightner,* 145 Iowa, 103; *Clifton Land Co. v. City of Des Moines,* 144 Iowa, 625; *Andre v. Burlington,* 141 Iowa, 65. Following these cases it is clear that we can not now, in this independent action, permit the findings and conclusions of the board to be contradicted by evidence *aliunde;* nor can its jurisdiction be assailed in that manner.

It is urged in this connection that as to district No. 11 the board of supervisors failed to make any finding that the district was "subject to overflow and too wet for cultivation," and failed to make any other finding than that the drainage "is a necessity." The record in this respect, however irregular, is quite as good as that found in the case of *Oliver v. Monona County,* 117 Iowa, 45. This question was disposed of in that case as follows: "It is not required by the statute that such finding shall be made of record. The statute says that if the board finds the ditch to be necessary, and that it will be conducive to public health, etc., then it shall proceed to locate and establish such ditch. The establishment of the ditch, therefore, involved the finding as to the propriety of it, and is conclusive on that point."

It is also urged that many of the purported proceedings of the board were had by the members of the board while they were not regularly in session as a public body.

*2. SAME: establishment of district: finding of necessity; sufficiency.*

This objection rests largely upon the form of the minutes as kept by the county auditor. For instance, at the time of the regular sessions of the board, the minutes and their proceedings appeared of record for successive days. But at the close of each day's minutes appeared the words, "Board adjourned." The testimony of the auditor in explanation of the minutes in this form was that when the board was in session from day to day successively he indicated the close of each day's proceedings by, "Board adjourned." If the board adjourned to some future date, other than the next day, such fact was indicated by stating the specific date to which the board adjourned. If the adjournment was *sine die,* such fact was also indicated. In short, he used the word "adjourned" in the temporary sense of "taking a recess." It is urged by appellant that the record is conclusive, and that it can not thus be explained away by oral evidence. She contends, also, that of legal necessity the words "Board adjourned" must mean a final adjournment *sine die,* whereby the session of the board was fully terminated. We think the appellant is leaning too heavily upon a mere word, and that the definition of the word is too flexible to bear the pressure of the argument. Turning to Webster's New International Dictionary, we find the following definitions, among others, of the word "adjourn": "To close or suspend for the day;" "suspend, take a recess;" "to suspend business for a time, as from one day to another, or for a longer period, or indefinitely." It is manifest that the sense in which the auditor used the word in his minutes is justified by the foregoing definitions. It is therefore immaterial whether we regard his testimony as admissible or not. We are satisfied that this form of the minutes was by no means fatal to the further continuance of the particular session of the board.

It is also contended that the plaintiff had no notice of the proceedings as to district No. 11. It is not very

*3. SAME: board proceedings: adjournment of board.*

clear from the record just what was done in the matter of
notice to the plaintiff in such proceedings.
It appears that the name of the plaintiff was
not included in the published notice.    We
quote from the appellant's argument at this point:    "At-
tempt was made to cure that defect by personal service
upon her at her home in Carroll county, but the service of
the notice was *there* made upon her husband, M. A. Hoyt."
It is argued, however, that the sheriff's return on the notice
failed to show that it was served upon a member of her
family, or at her usual place of residence.    As we under-
stand the record, the service was in fact good, but the re-
turn of the sheriff was defective.    The sheriff's return did
show that he served a notice upon the plaintiff's husband,
M. A. Hoyt.    Some presumption might fairly be indulged
that plaintiff's husband was a member of her family, and
that her "home" was her usual place of residence.    Be that
as it may, the defect was one which could have been cured
by mere amendment to the sheriff's return.    It was not a
case of *no notice,* nor even of defective notice, but of a
defective return of the sheriff.    It further appears that
plaintiff's husband was the "manager" of her property,
and he acted for her promptly, and filed a claim for her for
$2,500 damages.    The plaintiff knew of such claim at the
time.    If, therefore, there was any irregularity in the no-
tice or in the service thereof, it was quite cured by the vol-
untary appearance of the plaintiff.    *Ross v. Supervisors,*
128 Iowa, 427; *Chrisman v. Brandes,* 137 Iowa, 433;
*Head v. Board of Sup'rs of Greene & Calhoun Counties,*
141 Iowa, 651; *In re Lightner,* 145 Iowa, 95.

For the reasons appearing in the next division of this
opinion, we will not pursue in further detail all the points
made in appellant's argument.    The foregoing are, perhaps,
the most salient.    It is sufficient to say now that we have
considered them all.    We are not prepared to say that the
proceedings of the board were free from irregularity and

4. SAME: service
of notice:
waiver of de-
fect.

error; but we are very clear that nö such irregularity appears as would destroy the jurisdiction of the board, or render its proceedings void.   This conclusion is decisive against granting relief by injunction.

II.   There are other facts in the record which are quite conclusive against the appellant as to the major part, at least, of her case.   Some part of her land was sold at tax sale for the payment of the tax now in controversy.   It is claimed by appellee that she redeemed from such tax sale; and therefore there is nothing to enjoin.   The form of the redemption was in the purchase of the outstanding tax certificates of sale.   This purchase was done by her attorney, at the request of her husband.   The only dispute possible at this point is whether the tax certificates are held for the benefit of the plaintiff, or whether her husband holds them in hostility to her title.   The appellee called the husband, M. A. Hoyt, as a witness on this question. and he testified as follows:

*5. SAME: tax sale: injunction: redemption.*

I know who owns the certificates of tax sale which are involved in the petition in this case.   I had them bought. I do not think that they were assigned to me; they were assigned in blank.   I had Mr. Goldsmith buy them after this action was brought, and I had them signed in blank. I own them.   I can not say positively whether I owned them when this suit was brought or not.   I told Mr. Goldsmith, who was one of the attorneys for me, to buy them, and he procured them and had them assigned in blank, and he has got them yet.   Q. He has got them as the attorney for the plaintiff?   A. For the plaintiff in this case.   Q. Yes?   A. No, sir.   Q. You managed this case, didn't you? You were the man who saw Mr. Goldsmith about this case? A. I might be considered one of the attorneys in the case. Q. I did not ask you that. I asked you if you did not act for your wife in seeing Mr. Goldsmith about this case? A. I did; yes.   Q. Previous to beginning it?   A. Yes.   Q. You were the man who employed Mr. Goldsmith?   A. Yes; I employed Mr. Goldsmith and also Mr. Lothrop.   I em-

ployed them to try this case, and in addition to employing them to try this case I instructed and had Mr. Goldsmith to buy up the certificates of tax sale for the purchase of the land now involved in controversy in this case, and I had them assigned in blank, but I did it for myself. Q. I did not ask you for whom you did it. You did it in view of this litigation, didn't you, and to keep the land from going to tax deed? A. I did it for the purpose of getting control of it and controlling it. My purpose in getting them was to have absolute control of these tax certificates, and to avoid the penalty and interest, etc. I can not say that I had any ambition to get a tax deed on my wife's land. I do not know but what I may some time. Q. Well, that was not the purpose for which you bought up the tax certificates involved in the trial of this suit, was it? A. The reason that I bought them was because I had the money, and I could spare it, and I thought I had better put it into them certificates. Q. Yes. You thought you better put it in the certificates and control the certificates pending this litigation? A. The money was mine. Q. Mr. Hoyt, you have managed the business connected with this land and connected with this case always, have you not? A. Why, I have charge of that for Mrs. Hoyt; yes. Q. Well, whatever you do has her sanction? A. Yes; she usually agrees with me in whatever I do.

The plaintiff herself was examined by appellee, and testified to the agency of her husband as follows:

I have not been on this land in controversy very often. I do not manage it myself. My husband, M. A. Hoyt, manages it. He has my consent to do so, and, as a matter of fact, he is my agent. Q. Whatever he does in regard to this land, or in regard to any of this land, is with your sanction, and has been done because he had authority from you to so act? A. Well, we might not always agree. Q. I suppose this is true; but, when you do not agree, what he does goes, don't it? A. Yes. Q. As a matter of fact, Mr. Hoyt manages this land entirely, does he not? A. Yes. I knew that there was a proposed drainage district to be established. I knew of drainage district No. 11. My husband talked it over with me. He said they were proposing to form a ditch, but I did not know whether

they really did or not. I understood that they were proposing to form a ditch. I had knowledge of that fact. I did not think it was just to tax us, unless we should receive some benefit; and neither my husband nor I thought we received any benefit. My husband was on the ground, and the matter of looking after it was left in his hands. I do not knew whether I personally knew that they proposed to establish drainage district No. 5. I do not remember that my husband said anything about this to me. As a matter of fact, I did not pay any attention to either of these districts. The matter was turned over in the management of these lands entirely to my husband, M. A. Hoyt. He has power to sign papers, and rent my land and sign leases, and do whatever is necessary in regard to these lands. I do have a dim recollection that there might have been a notice served on me in regard to district No. 11. As a matter of fact, neither the ditch in district No. 5 nor the ditch in district No. 11 touches my land. The truth is that Mr. Hoyt, either because he assumed to, or because I gave him authority, had complete control over these farms. That is true for all these years. Q. You told him to do whatever was necessary in regard to whatever arose which in any manner interested you as affecting those farms, did you not? A. Yes.

From the foregoing it is apparent that the husband, M. A. Hoyt, has a large authority as agent for the plaintiff in relation to the land in question. As he puts it, he "might be considered one of the attorneys in the case." He directed the purchase of the tax sale certificates. This was done by one of plaintiff's attorneys of record in the case. Such certificates are now in his hands, indorsed in blank. Who can ever demand from the appellee, county treasurer, tax deeds under these certificates? Without appellant's connivance, her husband could not, if he would, acquire to himself a tax title under these certificates purchased in the manner and under the circumstances shown. The plaintiff, therefore, has no need of the injunctional relief which she prays. Furthermore, her purchase of the certificate was a redemption from the sale, and foreclosed

all further controversy as to the validity of the tax.    See *Morris v. Sioux County,* 42 Iowa, 416; *Sears v. Marshall County,* 59 Iowa, 603; *Thayer v. Coldren,* 57 Iowa, 112; *Weaver v. Stacey,* 93 Iowa, 689; *Manning v. Poling,* 114 Iowa, 20.

We do not overlook the fact that count 3 of the petition sets forth an assessment amounting to about $97, which was made against plaintiff's land because of the insufficiency of the former assessment.    As to such assessment, what is here said in this division of the opinion is not decisive.    As to such later assessment, special grounds of attack are laid, to the effect that the plaintiff had no notice thereof, and that there was fraud in the proceedings at this point.    At the trial, however, no proof was offered in support of this contention.    The alleged invalidity, therefore, of this later assessment rests upon the same grounds as have been considered in the first division of this opinion. We are satisfied that the appellant is not entitled to the relief prayed, and the order of dismissal entered in the trial court is accordingly *affirmed.*