HENRY TEGET, Appellant, v. CARL H. LAMBACH et al., Appellees.

No. 44754.

June 20, 1939.

Reed & Elick and H. D. Kepler, for appellant.

Carl H. Lambach, for appellees.

HAMILTON, J.—The material facts are not in dispute. Plaintiff was the owner of the real estate, being a 320-acre tract located in Worth county, Iowa, which land was included in a drainage district. No question is raised as to the regularity of the proceedings by which defendants Deming and Burch obtained the tax deeds. As stated by appellant's counsel, plaintiff's cause of action directed against the tax deeds is based on the theory that the drainage bondholders were, by virtue of their ownership of these bonds, holders of liens against the land in question and, as such, had an interest in this land which disqualified and incapacitated them from obtaining tax title to it. He further states that the suit is based on section 7292 of the 1935 Code and that, the deeds being void, no tender of taxes paid is necessary even in this action to quiet title in which affirmative equitable relief is asked. The trial court found against the plaintiff and he has appealed to this court.

Section 7292 relates to fraudulent sales. We are unable to see how this statute is applicable to the case before us. It is not claimed there was any fraud or collusion or previous conspiracy to defraud. The question we have is purely a legal one. It is not claimed that these bondholders were under any duty to pay the taxes. Neither is it claimed they had the right to redeem from a tax sale. Appellant relies solely on the legal disability of these bondholders to acquire tax title. He says this disability is twofold. The first is that the bondholder has "a disqualifying lien" on the land, and the second is that he has "no necessary statutory authority to enter into the tax title as an individual". The first is based on sections 7477, 7478 and 7504 which appellant asserts, together with the terms of the bond itself, create a lien on the land in the drainage district. These sections provide for the levy of an assessment, according to benefits, against the land comprising the drainage district and that such taxes so levied shall be a lien upon all premises against which they are assessed "as fully as taxes levied for state and

county purposes", and set out the form of the bond and provide "that it is to be paid only from taxes for levee and drainage improvement purposes levied and collected on the lands assessed for benefits within the district for which the bond is issued." The bond contains the provision that:

"This bond is based upon and constitutes a lien upon and is payable solely out of the proceeds of the special assessments for benefits heretofore regularly levied on the lands to be benefited, and the said special assessments are hereby irrevocably pledged therefor."

▌ At the outset, it will be noted that it is the tax that is a lien not the bond. Appellant takes notice of this and frankly states:

"While it must be admitted that the statutes do not specifically and technically state that the bond is a lien on the land, the bonds and the assessments are so closely tied together that it may be substantially said that the bond is likewise a lien on the land."

▌ The bond is a lien upon the entire proceeds of the special assessment, not upon any particular tract of land. The whole process is statutory and this is exclusive of all other remedies. If the special assessments are not paid, the only method of collection is by tax sale of the premises. The holders of these bonds have no lien against any specific tract of real estate but against the drainage fund, i. e., the proceeds from the assessment of all the land in the district, and they are required to look to this fund alone for payment of their bonds. Appellant, in his brief and argument, enumerates the different classes of persons which the courts have held may not, in equity, for various reasons, be allowed to purchase at tax sale the land in which they have an interest either as owners or lien holders, or who stand in a trust or fiduciary relationship to such persons, including mortgagees, mortgagors, judgment lienholders, trustees and, in certain cases, lessees, etc., and insists that drainage bondholders should now be added to the list.

The relationship of such bondholders is not parallel with those enumerated, as will readily be revealed by a reading of the cases cited and relied upon by appellant, viz: Hawkeye L. Ins. Co. v. Valley-D.M. Co., 220 Iowa 556, 260 N. W. 669, 105

A. L. R. 1018; Gilman v. Heitman, 137 Iowa 336, 113 N. W. 932; Porter v. Lafferty, 33 Iowa 254; Griffin v. Turner, 75 Iowa 250, 39 N. W. 294; National Surety Co. v. Walker, 148 Iowa 157, 125 N. W. 338, 38 L. R. A. (N. S.) 333; Lane v. Wright, 121 Iowa 376, 96 N. W. 902, 100 Am. St. Rep. 362; Sorenson v. Davis, 83 Iowa 405, 49 N. W. 1004; Morrison v. Culver's Estate, 216 Iowa 676, 248 N. W. 237; Witmer v. Polk County, 222 Iowa 1075, 270 N. W. 323; Beacham v. Gurney, 91 Iowa 621, 60 N. W. 187; Dohms v. Mann, 76 Iowa 723, 39 N. W. 823; Stinson v. Richardson, 48 Iowa 541; Olleman v. Kelgore, 52 Iowa 38, 2 N. W. 612; Clark v. Brown, 70 Iowa 139, 30 N. W. 46; First Cong. Church v. Terry, 130 Iowa 513, 107 N. W. 305, 114 Am. St. Rep. 443; Hoyt v. Brown, 153 Iowa 324, 133 N. W. 905; Bruck v. Broesigks, 18 Iowa 393; Lake v. Gray, 35 Iowa 44; Harrington v. Foster, 220 Iowa 1066, 264 N. W. 51.; Board of Supervisors v. District Court, 209 Iowa 1030, 229 N. W. 711; Fergason v. Aitken, 220 Iowa 1154, 263 N. W. 850; Bechtel v. Mostrom, 214 Iowa 623, 243 N. W. 361; Bechtel v. Board of Supervisors, 217 Iowa 251, 251 N. W. 633; Bibbins v. Clark & Co., 90 Iowa 230, 57 N. W. 884, 59 N. W. 290, 29 L. R. A. 278; Iowa Sec. Co. v. Barrett, 210 Iowa 53, 230 N. W. 528; Galleger v. Duhigg, 218 Iowa 521, 255 N. W. 867; 61 C. J. 1117, Sec. 1519; 61 C. J., 1198; Cooley, Law of Taxation, Secs. 1437, 1565; Secs. 7261, 7427, 7482, 7589, 7590, and 7590-c1, Code, 1935.

Appellant does not claim that any of the foregoing authorities are directly in point. He concedes this is a case of first impression, but argues that the principles of law laid down might logically be and should be applied to holders of drainage bonds.

■ It has never been a part of the policy of this or any other state or sovereign to place limitations upon the power and means of maintaining its own existence.

■ In this state, the only statutory prohibition, relating to purchasers at tax sale, is found in section 7261 of the 1935 Code entitled "Fraud of officers". Aside from this section of the code, under the unlimited provisions of section 7253 of said code, any person may become a purchaser at tax sale.

■ There are many persons who, by reason of their interest in the premises and their relationship to others interested therein, may not, for equitable reasons, become purchasers and these are dealt with and the equitable principles discussed and ap-

plied in the authorities above cited and need no further elaboration herein. Generally speaking, they include persons whose duty it is to pay the taxes or who have such an interest in the property that they might redeem the same from tax sale and save themselves from loss and injury, or those lienholders who may pay the taxes and are given a preferred lien over other lienholders and the titleholder for the amount of the taxes paid. Then there is the class of persons occupying fiduciary relationships, such as agents, attorneys, guardians, trustees, etc., who may not violate their trust by becoming purchasers at tax sale of the trust property.

In the instant case, we seek in vain for equities which may be brought forth in behalf of plaintiff. It was and is still his duty to pay the taxes and assessments against property to which he claims title. By "hook or crook" he has managed to keep possession of this 320-acre tract of land without paying general taxes for 12 years; he paid the interest for three years and one installment of principal only on the special assessment, being the 1925 installment, and has paid nothing thereon since. He recognized the rights of the purchasers at tax sales by negotiating with Lambach in reference to renting the farm from them. True, after discovering there was a defect in the first notice of expiration, he repudiated his oral agreement to rent and laid claim to the rentals but he renewed his efforts to rent the premises, after the defective service was remedied by the giving of another notice. In the meantime, the purchasers, assertedly relying on plaintiff's conduct in thus recognizing the superior title of the tax sale, placed several thousand dollars worth of permanent improvements on the place. Plaintiff has made no offer or tender of payment of the costs of the improvements or of the taxes paid or taxes assessed and levied against the property but seeks, by this action, to quiet his title without reimbursing defendants in any particular or making an outlay of any money except his attorney's fees and, at the same time, contending the purchase at tax sale amounted to the payment of the taxes and freed his property of all deferred installments of special assessments. He wants what he calls equity without doing equity, seeking this advantage in a court of equity on a purely technical legal basis.

Defendants are not now showing, nor have they ever shown, any disposition or desire to wrong the plaintiff. They

put up the money, by purchasing the bonds, for constructing the improvement for which plaintiff obtained a special benefit. All they did was to bid the property in at tax sale in an effort to protect their investment. They offered to return the property to plaintiff and still offer, in their printed brief and argument in this court, to do so if he will but pay the taxes due to the drainage district and reimburse them for such taxes as they have paid together with such improvements that they have made. Under such circumstances, we think the equities were and are with the appellees and the trial court was right in so finding. We can see no legal impediment in the way of these bondholders becoming purchasers at tax sale insofar as this plaintiff is concerned. They have done him no wrong. Neither has he shown any equitable basis for his claim. This question was incidentally involved in the case of Bechtel v. Board of Supervisors, supra, an action in mandamus to compel the board of supervisors of Winnebago county to effect a repossession of outstanding tax sale's certificates issued at scavenger sale for unpaid taxes and drainage assessment; we denied the writ and, in the discussion of the case, we said [217 Iowa 257, 251 N. W. 636] :

"Nothing prevented the bondholders individually or collectively from buying the certificates at one of the tax sales. By so doing they would have been enabled directly to receive any and all benefits that could possibly have been derived by the indirect method of having them purchased by the county. As the bondholders had ample opportunity of protecting their own interests by purchasing the property at tax sale, they cannot now complain because the board of supervisors did not do so under section 7590-c1."

After this opinion was handed down, the 46th General Assembly (chap. 88, Sec. 1) amended the law by enacting section 7590-g1 permitting bondholders to purchase the certificates, if the board neglected or refused to do so, and hold the same in trust for the drainage district.

Plaintiff also lays claim to the rentals for 1937, contending that, even though the defendants acquired a valid tax title, inasmuch as the premises were occupied by plaintiff's tenant and defendants brought no ouster proceeding to gain immediate possession, plaintiff may still claim the rent. This

argument is fallacious. A tax title is not a derivative title but is a new and independent grant from the sovereign. Code section 7286; Wood v. Schwartz, 212 Iowa 462, 236 N. W. 491; Means v. City of Boone, 214 Iowa 948, 241 N. W. 671; Fergason v. Aitken, supra. Therefore, the antecedent estate of plaintiff was totally destroyed by this valid tax deed. The right of possession of plaintiff and that of his tenant was dependent upon the continuance of the estate as against the holder of the tax deed. When the tax deed became effective, every right of the plaintiff was cut off. Upon the execution and recording of the tax deed, all the right, title, interest, and estate of the former owner became vested in the grantee named in the tax deed. Section 7286, Code of Iowa, 1935.

We hold that the bondholders were not disqualified as bidders at the tax sale; that plaintiff has no standing in a court of equity because of failure to offer to do equity, and is not entitled to the rentals claimed.

Accordingly, the decree of the trial court is hereby affirmed. —Affirmed.

MITCHELL, C. J., and SAGER, MILLER, BLISS, RICHARDS, HALE, and OLIVER, JJ., concur.