NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID GARY GLADDEN, | ) | |
| | ) | Supreme Court No. S-14977 |
| Appellant, | ) | |
| | ) | Superior Court No. 3DI-11-00118 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CITY OF DILLINGHAM and | ) | AND JUDGMENT* |
| DONALD MOORE, | ) | |
| | ) | No. 1500 – June 4, 2014 |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Dillingham, Pat L. Douglass, Judge.

Appearances: David Gary Gladden, pro se, Dillingham, Appellant. Patrick W. Munson, Boyd, Chandler & Falconer, LLP, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

## I.    INTRODUCTION

David Gary Gladden filed a quiet title action to assert his ownership interest in real property scheduled to be sold by the City of Dillingham in foreclosure proceedings to satisfy a property tax delinquency judgment. Gladden's complaint included a request for a temporary restraining order (TRO) to prevent the sale. The superior court denied the TRO following a hearing and later granted the City's summary

---

\*    Entered under Appellate Rule 214.

judgment motion dismissing the quiet title action. Gladden sought reconsideration of the dismissal and challenged the superior court's authority generally, as well as Superior Court Judge Pat L. Douglass's authority specifically, to hear the case. The superior court denied these motions. Gladden renews his arguments on appeal, challenging the superior court's and Judge Douglass's authority over the matter, as well as asserting his superior ownership interest in the property.

Gladden's arguments are meritless. We affirm the superior court's grant of summary judgment to the City and its denial of Gladden's motions.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Gladden owned an apartment building in Dillingham. He failed to pay property taxes for at least six years, from 2002 to 2007. The City began foreclosure proceedings on the property in satisfaction of delinquent real property taxes, penalties, interest, and costs for these taxable years. The superior court issued a judgment and decree of foreclosure against the property for the delinquent amounts. After judgment was entered, the statutory redemption period started, providing Gladden one year to remit the lien amount and redeem the property.[1] When Gladden did not pay the lien amount within the statutory period, the City moved the superior court to issue a clerk's deed that

---

[1]    This redemption period, codified in AS 29.45.400, provides:

> Properties transferred to the municipality are held by the municipality for at least one year. During the redemption period a party having an interest in the property may redeem it by paying the lien amount plus penalties, interest, and costs . . . . Property redeemed is subject to all accrued taxes, assessments, liens, and claims as though it had continued in private ownership. Only the amount applicable under the judgment and decree must be paid in order to redeem the property.

would transfer title to the property to the City. The superior court issued the deed which conveyed "all rights, title, and interest of the former owner of the . . . property . . . to the City of Dillingham."

The City served Gladden with a 30-day notice to quit on November 5, 2010. After Gladden failed to vacate the property, the City obtained a forcible entry and detainer order from the court on January 5, 2011 to take possession of the property from Gladden. The City scheduled a sale of the property for September 17, 2011. Gladden filed a complaint for quiet title and sought a TRO from the court to halt the sale. The court heard and denied Gladden's request for a TRO on September 16, 2011. The City sold the property via quitclaim deed on September 21, 2011.

## B. Proceedings

### 1. Prior to the sale of the property

Gladden filed the underlying complaint and motion for a TRO on September 9, 2011. Gladden's action for quiet title essentially sought a determination that he was the rightful owner of the property and the City had an inferior claim of title because the City's taxing ordinance (establishing its authority to foreclose) never existed.

The TRO hearing occurred before Judge John Wolfe. When the court inquired about Gladden's likelihood of success on the merits, Gladden responded that he believed he would prevail because of "the simple fact that [the City has] admitted that they have no taxing authority . . . and so the City's only interest is . . . [the] clerk's deed in 2010." The court concluded that Gladden had not established a reasonable probability of success on the merits and denied the TRO.

The City filed an answer to Gladden's complaint, contending that Gladden failed to state a claim upon which relief could be granted and asserting various legal and

equitable defenses. The City sold the property on September 21, 2011, provided a final accounting to Gladden, and filed a satisfaction of judgment with the superior court.

### 2. After the sale of the property

Following the property sale the City filed a motion for summary judgment seeking dismissal of Gladden's quiet title action. Gladden filed an opposition. In his opposition Gladden argued that he held superior title to the property and the superior court did not have authority to hear his case. The court granted summary judgment in favor of the City, concluding that "the City followed all the statutory requirement[s] by obtaining a clerk's deed and . . . the clerk's deed gave the City clear title, thereby authorizing the City to sell the property."

Gladden filed a second "opposition to summary judgment" that the court treated as a motion for reconsideration. The motion for reconsideration repeated all of Gladden's claims from his original opposition, and also argued that Judge Douglass did not have authority as a judicial officer because she had not been properly appointed as a judge. The court denied Gladden's motion.

Gladden then filed a "motion to recuse" Judge Douglass that again attacked her authority to rule in his action. The court denied this motion.

Gladden appeals, proceeding pro se.

## III. STANDARD OF REVIEW

We review de novo a superior court's grant of summary judgment,[2] and must determine "whether any genuine issue of material fact exists and whether on the established facts the moving party is entitled to judgment as a matter of law."[3] We draw

---

[2]    *Nielson v. Benton*, 903 P.2d 1049, 1052 (Alaska 1995) (citing *Tongass Sport Fishing Ass'n v. State*, 866 P.2d 1314, 1317 n.7 (Alaska 1994)).

[3]    *Id*. at 1051-52 (citing *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992)).

all factual inferences in favor of, and view the facts in the light most favorable to, the party against whom summary judgment was granted.[4] We review the constitutional and statutory authority of the superior court, and the authority of a judge appointed to that court, de novo.[5]

## IV. DISCUSSION

On appeal Gladden argues that the superior court erred in granting summary judgment to the City. Gladden's complaint is based on his belief that the City of Dillingham does not have the authority to tax him; absent this authority, Gladden argues, the City did not validly foreclose on his property and cannot hold superior title. Gladden also challenges the superior court's and Judge Douglass's authority to hear and decide his case.

### A. The Superior Court Properly Granted Summary Judgment To The City.

Gladden argues that he retains "perfect" legal title because the City had no authority to tax him. He alleges that because the City had no authority to tax him, the City committed fraud and he retains "absolute" title despite the superior court's rulings.

More specifically, Gladden contends that the City previously repealed its sales tax ordinance and has not since reenacted it. Gladden asserts that "Exhibit A" to the City's original repeal of its sales tax ordinance cannot be found, proving the City

---

[4]     *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005) (citing *Ellis v. City of Valdez*, 686 P.2d 700, 702 (Alaska 1984)).

[5]     *State, Dep't of Revenue v. Deleon*, 103 P.3d 897, 897-98 (Alaska 2004) (concluding that whether superior court has express or inherent authority over a dispute is question of law the court reviews de novo); *see also State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 65 (Alaska 2001) (applying independent judgment standard of review when interpreting Alaska statutes and the Alaska Constitution).

never validly reenacted a sales tax. In effect, Gladden believes that the City has no lawful authority to tax him because the City will not produce "Exhibit A."

The City characterizes Gladden as a tax protester who prefers to continuously litigate the City's authority to collect taxes rather than pay his taxes.[6] The City explains that it re-codified its ordinances in 1977, and as part of that effort enacted Ordinance 77-10, which repealed the prior tax ordinances and re-codified them in the new version of the code. According to the City, the text of the new law was set forth in "Exhibit A" to Ordinance 77-10, but the original "Exhibit A" was lost and is not part of the City records. The City explains that the text of "Exhibit A" was codified upon adoption and the sales tax has applied to all taxable sales and services within the City since that time, including Gladden's apartment rental income from the building that is the subject of this litigation. The City argues that Gladden's "Exhibit A" argument is not relevant to whether he can challenge the City's claim of title resulting from a prior tax foreclosure due to his non-payment of real property taxes.

The City is correct. The underlying tax foreclosure concerned Gladden's non-payment of real property taxes, not his non-payment of a sales tax. As the City correctly argues, we previously ruled that a tax payer cannot rely on the absence of "Exhibit A" to Dillingham Ordinance 77-10 to overcome the presumption that the City lawfully passed its sales tax.[7] Gladden cannot challenge the City's sales taxing authority

---

[6]    *See, e.g.*, *Gladden v. City of Dillingham*, Mem. Op. & J. No. 5891, 2012 WL 5075282 (Alaska App., Oct. 17, 2012) (upholding criminal conviction for failure to pay monthly sales tax returns on multi-unit apartment building); *Gladden v. City of Dillingham*, Mem. Op. & J. No. 1253, 2006 WL 1668029 (Alaska, June 14, 2006) (holding that City had authority to collect from Gladden unpaid sales and personal property taxes, outstanding business-licensing fees, and certain penalties and interest).

[7]    As we explained in *McCormick v. City of Dillingham*, 16 P.3d 735, 738 & (continued...)

in an effort to collaterally attack the underlying foreclosure action that resulted from his failure to pay real property taxes.

In its order granting summary judgment the superior court concluded that the City followed all the statutory requirements in obtaining a clerk's deed, and the clerk's deed gave the City clear title, thereby authorizing the City to sell the property. The superior court's conclusions are supported by this record, and the court made no legal error in its ruling. As explained above, on March 2, 2009, the superior court issued a decree of foreclosure and judgment conveying the property to the City in consideration

---

[7]     (...continued)
n.5 (Alaska 2001):

> In 1977 Dillingham undertook an effort to codify its city ordinances. In doing so it passed Ordinance 77-10. Ordinance 77-10 repealed the sales tax ordinance and simultaneously enacted Title 8, which was to be titled "Taxation and Special Assessments." But Ordinance 77-10 did not clearly indicate the ordinances that were to be reenacted as Title 8. Instead, Ordinance 77-10 stated that these would be "more particularly set forth in Exhibit A attached hereto." Although Exhibit A has not survived in Dillingham's records, a sales tax similar to the original sales tax ordinance appeared in Title 4, rather than Title 8, of the codification of the Dillingham municipal code. Although Ordinance 77-10 calls for the "Taxation and Assessment" ordinance to appear in Title 8, Dillingham explain[ed] . . . that the sales tax appears in Title 4 because of a decision of the publisher.

We determined that "Ordinance 77-10 was not a drastic change in policy for the [C]ity of Dillingham. Instead, it was an effort to codify the municipal ordinances, which had included a sales tax for ten years." *Id*. We explained that a presumption of government regularity requires an appellant to present more than "a lost exhibit or [a mislabeled] . . . municipal code" to effectively challenge the legality of Dillingham's sales tax. *Id*. at 738-39.

-7-                                                                    *1500*

for delinquent property tax payments, subject to Gladden's statutory redemption rights. From this date, AS 29.45.400 provided Gladden one year to redeem, as "[p]roperties transferred to the municipality are held by the municipality for at least one year" subject to the record holder's payment of the amount applicable under the judgment and decree. Gladden did not redeem the property, and once the statutory redemption period passed, the City obtained a clerk's deed that conveyed title to the City. This "[c]onveyance [gave] the municipality clear title, except for prior recorded tax liens of the United States and the state."[8] Under AS 29.45.460(b), "[t]ax-foreclosed property conveyed to a municipality by tax foreclosure and not required for a public purpose may be sold." "A buyer of the property at the subsequent tax sale receives a new, independent title and not that of the former owner."[9]

Because the superior court correctly ruled that the clerk's deed gave the City clear title to the property prior to its authorized sale, it properly granted summary judgment.

B. **The Superior Court Had Constitutional And Statutory Authority Over This Dispute.**

Gladden asserts that the consolidated seal of the "Trial Courts" demonstrates that the superior court was not a "court of record" authorized to hear his case. Gladden argues that the superior court's use of the consolidated seal makes that court "an administrative and non-constitutional court" and we must therefore invalidate the superior court's summary judgment and post-summary judgment order on this ground.

---

[8] AS 29.45.450(b).

[9] *Jefferson v. Metro. Mortg. & Sec. Co. of Alaska, Inc.*, 503 P.2d 1396, 1399 (Alaska 1972) (citing *Teget v. Lambach*, 286 N.W. 522, 526 (Iowa 1939) (decided under former law)).

This is a frivolous argument. The seal of the consolidated trial courts is governed by Alaska Administrative Rule 4(d)[10] and has nothing to do with the authority of the superior court to adjudicate a dispute. The superior court's authority and jurisdiction are established by the Alaska Constitution and state statutes. Article IV, section 1 of the Alaska Constitution provides that "[t]he judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature . . . . The courts shall constitute a unified judicial system . . . [with] [j]udicial districts . . . established by law." Alaska Statute 22.10.020 provides that "[t]he superior court is the trial court of general jurisdiction, with original jurisdiction in all civil and criminal matters," and that its jurisdiction "extends over the whole of the state."[11] Under this constitutional and statutory authority, the superior court had authority to hear and decide Gladden's quiet title action.

### C. Judge Douglass Had Constitutional And Statutory Authority Over This Action.

Gladden also argues that Judge Douglass is not a bona fide judicial officer bound by the federal and state constitutions. Specifically, he challenges whether Governor Sean Parnell properly appointed Judge Douglass to the superior court or whether she received a civil commission.

---

[10]  That rule provides:

> In those court locations where the superior and district courts have been consolidated for administration and when ordered by the presiding judge of the district, the seal for the superior and district courts is a vignette of the official flag of the state with the words "Seal of the Trial Courts of the State of Alaska" and a designation of the district surrounding the vignette.

[11]  AS 22.10.020(a) & (b).

Again, this is a frivolous argument. Gladden included in his own excerpt of record a copy of Judge Douglass's Oath of Office, as well as a copy of the letter Governor Parnell sent to Judge Douglass confirming her appointment to the superior court. Judge Douglass was lawfully appointed to the superior court,[12] and Gladden's arguments are wholly without merit.

## V. CONCLUSION

We AFFIRM the superior court's grant of summary judgment to the City on Gladden's quiet title action. We also AFFIRM the superior court's post-summary judgment orders that the superior court generally, and Judge Douglass specifically, had authority to hear and decide the issues in Gladden's case.

---

[12] Article IV, section 5 of the Alaska Constitution states: "The governor shall fill any vacancy in an office of . . . superior court judge by appointing one of two or more persons nominated by the judicial council." AS 22.10.110 provides: "Each superior court judge, upon entering office, shall take and subscribe to an oath of office required of all officers under the constitution and any further oath or affirmation as may be prescribed by law."