MARY HARRINGTON, Appellee, v. GEORGE FOSTER et al., Appellants.

No. 43095.

December 17, 1935.

George H. Mayne, for appellants.

J. J. Ferguson, for appellee.

Powers, J.—██ ██ The sole question here is: Which of the parties hereto is the owner of certain accretion lands? The record is such as to render extremely difficult and hazardous any attempt to arrive at definite and certain conclusions regarding many of the facts in the case. The plaintiff filed a petition and two amendments. She describes the land which she claims differently in each document. The land awarded her in the decree does not correspond in terms with any of the descriptions in the petition or amendments. Difficulty arises from several sources. One is that descriptions contained in the documents upon which the issue, to some extent, depends, are not very complete or comprehensive. There are references to monuments, the locations of which do not appear. Moreover, a large part of the tes-

timony in the case has reference to a plat, and the answers of the witnesses frequently consisted of indicating on the plat various locations called for by the questions. Under such circumstances, a court that is unable to see where the witness is pointing on the plat is unable to get much benefit from the answers. Effort seems to have been made to obviate that difficulty to some extent by having marks made on the plat by the witness. The plat, however, is not before us. It appears to have been lost. No effort was made to replace this missing and important part of the record. Under such circumstances, extreme caution must be exercised in reaching a different conclusion on some of the facts than the conclusion reached by the trial court. Where the complete record on which the trial court reached its conclusion on a proposition is not before us, and where the contrary does not appear, the presumption must be indulged that the trial court properly performed its duty and reached a proper conclusion. Garner v. Pomroy, 11 Iowa 149; State v. Orwig, 27 Iowa 528.

The controversy is over lands in a 40-acre tract described as the southeast quarter of the southwest quarter of section 24, township 74, range 44, west of the 5th P. M., Pottawattamie county, Iowa, and the accretions appurtenant thereto. This description would indicate that there had been originally a government survey of this property. The property appears to have been included also in what the appellants call a "wild cat plat" of Lafayette addition to the city of Council Bluffs. This plat does not appear in evidence. We know nothing as to its date or what it shows as to the location of the river. The property also seems to have been embraced within an auditor's plat made about 1918. It shows the river 1,122 feet from the northern boundary of the 40-acre tract. Neither party claims through any government grant. The rights of each party, originally at least, seem to have been acquired by possession only.

The record is silent as to the history, ownership, and possession of this property prior to about 1881. It appears that about that date this entire 40-acre tract of land had been washed away by the Missouri river, except possibly about 5 acres along the northern boundary. On a part of this 5-acre tract, a man by the name of Batchelor settled. Later appellant Foster seems to have settled on this same tract east of Batchelor. In July, 1919, Batchelor brought an action to quiet title against Foster

based on adverse possession to a part of the 40-acre tract containing about 8 acres and described as follows:

Commencing at a point 411 feet west of the northeast corner of the above-described forty; thence south 1,131 feet; thence west 505 feet to the bank of Mosquito creek; thence northeasterly along the east bank of Mosquito creek to the north line of the 40-acre tract; thence east 80 feet to the place of beginning.

What claim Foster had at that time to any part of the 40-acre tract does not appear. No part of the record in that case is before us. The abstract of record in the instant case contains the statement that the decree in that case quieted the title in Batchelor to the property as above described. The circumstances seem to indicate that Foster was occupying and had at that time, by reason of such occupancy, a superior claim to the east 411 feet of the 40-acre tract, the part lying east of the Batchelor land. The appellee in the present case is the grantee of Batchelor. There is some dispute in the evidence as to whether, when the Batchelor case was decided the Missouri river constituted the south boundary of the tract. It appears that the river is now some half mile further south than the southern limit of the description in the Batchelor decree, and it is this additional land that is in controversy. The court in the trial of the instant case found that at the time the Batchelor decree was entered, the south boundary of the land was the Missouri river, that the land had a riparian boundary, and that all accretions resulting from the river working further south belonged to the appellee as the successor to the Batchelor title. The court found that the appellants owned the east 411 feet of the 40-acre tract and that all accretions south of and within the limits of the extended lines on the east and west boundaries of that tract belonged to the appellants; that the remaining accretions south of the 40 belonged to the appellee. The trial court further found that the appellee had been in adverse possession of the accretions for more than the statutory period of ten years. The grounds on which this decree is challenged will be separately noticed.

■■■ I. Appellants claim that the southern boundary of the tract in which title was quieted in Batchelor was not a riparian boundary at the time the decree in the Batchelor case was entered and, therefore, there could be no accretions to said tract. The evidence satisfactorily and without dispute shows that prior to the time Batchelor instituted his action, he had a survey made

and that the survey extended from the north boundary of the 40-acre tract to the river and then west along the river to Mosquito creek, a distance of 505 feet. Batchelor commenced his action in July, 1919. The case was not tried, however, and the decree was not entered until February, 1921. There is evidence from which it may properly be inferred that during that interval the river worked some distance further south. From this appellants argue that it was not riparian land at the time the decree was entered establishing the Batchelor title and, therefore, there could be no accretions.

It appears that the Batchelor title was based on adverse possession; that all of the land, title to which was quieted in him, was accretion land except a few acres at the north where his buildings stood and on which he settled in 1881, when the river occupied all the rest of the forty. If Batchelor was entitled to the accretions appurtenant to the tract on which he settled, it is unreasonable to suppose that the court intended to stop part way to the river. If he was entitled to accretions at all, he certainly was entitled to them extending clear up to the river, and we think it quite clearly and satisfactorily appears that the decree intended to accomplish that purpose. The fact that some accretions may have been, and probably were, added between the time the survey was made on which the petition was based and the time the decree was entered, would not defeat that purpose, and would not deprive the land of its riparian boundary.

■■■ II. Appellants further contend that since the land, title to which was quieted in Batchelor, was described by metes and bounds both in the decree and in the conveyance to the appellee herein, no accretions attached thereto. It is, of course, true that a riparian landowner may convey a tract of his land and so describe it as to negative an intention to convey with it any riparian rights, including the right to accretions. This is sometimes accomplished by using a mete and bound description. But where it is held that such a description carries with it no rights of riparian ownership, it is where the circumstances are such as to negative an intention on the part of the grantor to convey such rights. Rivas v. Solary, 18 Fla. 122. No such situation exists in this case. Indeed, the description put into the decree and the circumstances under which it was put in clearly indicate a contrary intention, because a large part of the land

embraced within the description was itself accretion land. See 45 C.J. 572.

**III.** The final challenge of the appellants to the decree, and the one which seems to be urged with greater confidence, relates to the effect of a tax deed which was issued affecting the property in controversy. It seems that the taxing authorities of Pottawattamie county, prior to about 1919, assessed taxes against the property in this forty-acre tract by subdivisions as they appeared on a plat of an addition to Council Bluffs. About that date there was levied a tax against the entire 40 acres described as a government subdivision. The forty acres were sold at tax sale in 1920. It will be noticed that this was during the time the suit between Batchelor and Foster was pending. Foster had some arrangement with one Arnd, who bought the forty acres at tax sale before the purchase was made. After Batchelor had obtained his decree quieting his title against Foster and before tax deed was issued, Batchelor sent his attorney to Arnd about the matter of making redemption, and Arnd suggested that as a means of helping to strengthen the title of both Batchelor and Foster that the tax deed be allowed to issue and then Arnd would convey to Foster the land that belonged to him, and to Batchelor the land that belonged to him. This arrangement was acquiesced in by Batchelor, who paid, and Arnd received, the amount necessary to redeem the Batchelor land. Arnd, subsequently and in 1922, acquired a tax deed and conveyed to Batchelor by quitclaim deed the land specifically described in the decree quieting his title, as hereinabove set out. The deed he made to Foster, however, conveyed the entire forty acres with the exception of the eight-acre tract described by metes and bounds which was conveyed to Batchelor. The description in the Foster quitclaim deed is as follows:

"The Southeast Quarter of the Southwest Quarter of Section 24, Township 74, Range 44, with all accretions thereto, excepting the following: Commencing at a point on the north line of said tract 411 feet west of the northeast corner thereof, thence running south paralleling the east line of said forty acre tract 1131 feet; thence west 505 feet to the east bank of Mosquito Creek; thence following the east bank of said Creek in a northeasterly direction to the north line of said forty acre tract, thence east 80 feet to the place of beginning, being about eight acres, more or less."

It will be observed that if the descriptions in these deeds from Arnd are to be controlling, the appellee herein, as grantee of Batchelor, has only the eight acres substantially in the middle of the forty-acre tract, and that the remaining portion of the forty entirely surrounding the eight-acre tract on the east, south, and west, belongs to Foster. Under such circumstances, all accretions to the forty would, of course, belong to Foster. If the tax deed accomplishes what appellants contend for, there is much to support an inference that it may have been indulged in by Foster as a means of depriving Batchelor of much of the fruits of the decree quieting Batchelor's title entered shortly prior thereto. But can it be said to have that effect under the circumstances here? One who is under obligation to pay taxes on land cannot allow the taxes to default and obtain a tax deed and thereby strengthen his title to or claim upon the land. Doud v. Blood, 89 Iowa 237, 56 N. W. 452. Payments so made for a tax sale certificate are merely payments of taxes. In this case the court could have found that Arnd bought this land at tax sale for Foster, and in pursuance of an arrangement with Foster. Moreover, the payment by the landowner of the amount necessary to redeem to the holder of the tax sale certificate operates as a redemption. Swan v. Whaley, 75 Iowa 623, 35 N. W. 440. The court must have found, so far as Batchelor was concerned, that Arnd had the money with which to make redemption when he obtained his tax deed. Under such circumstances, it cannot be said that the issuance of the tax deed vested in Arnd any right to this land. If he had no right to the land, he certainly conveyed none by the quitclaim deeds which he subsequently made to Foster and to Batchelor. Moreover, all accretions to the eight acres which Batchelor owned were properly a part of it and passed by a conveyance of it. So that the deed to Batchelor must be construed as covering all the accretions properly appurtenant thereto. This would give to Batchelor what he had before the tax deed was issued. That was the obvious intention. The deeds, even if treated as conveying anything, are susceptible of that construction. The title and ownership of this land, therefore, as between these parties must be determined without reference to the tax deed and subsequent quitclaim deeds.

IV. Appellants also complain of the finding of the trial court that appellee had been in adverse possession of the land

in controversy for the statutory period. Of course, if appellee is entitled to these lands as accretions to lands which she admittedly owns, it is not important to determine whether or not she has been in adverse possession for the statutory period. Conversely, if adverse possession for the statutory period appears, it is not important to determine whether or not they are accretions to appellee's land. The trial court found for appellee on both propositions. In view of the absence of the plat to which so much of the testimony of witnesses refers, and without which some of the testimony of the witnesses is not intelligible, it cannot be said that the finding of the trial court that appellee has been in adverse possession for the statutory period is not sustained by a preponderance of the evidence. The trial court had the benefit of evidence which we do not have. As previously indicated in this opinion, the presumption that the trial court acted properly must prevail in such a situation.

No satisfactory reason appears for disturbing the decree of the trial court. It is therefore affirmed.—Affirmed.

KINTZINGER, C. J., and all Associate Justices concur, except RICHARDS, J., who took no part.